UNITED STATES *v.* SPINGARN BROS. (No. 1072).[1]

COLLECTOR'S AUTHORITY IN RELIQUIDATING.

The legislative and judicial history of the customs administrative act is reviewed. The customs administrative law markedly differentiates between actual market value and dutiable actual market value, and makes it the duty of the appraising officer to determine the first, the duty of the collector to determine the last. The goods here—feathers—were packed in inside boxes and there had been additional packing charges, though all mention of these was omitted from the consular invoice. The collector, on being later apprised of the fact of omission, reliquidated the entry by adding thereto the packing charges. There was in this no interference with or change of the invoice entered or appraised valuation; the collector simply exercised his right of adding to the appraised value to make dutiable value these packing charges. Beard *v.* Porter (124 U. S., 437).—United States *v.* Francklyn (4 Ct. Cust. Appls., 54; T. D. 33306) distinguished.

United States Court of Customs Appeals, December 15, 1913.

APPEAL from Board of United States General Appraisers, Abstract 30556 (T. D. 32943).
[Reversed.]
*William L. Wemple,* Assistant Attorney General, for the United States.
*Jules Chopak, jr.,* for appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

The sole question presented by this record concerns the respective duties of the collector and appraiser in assessing for duty items for

---

[1] Reported in T. D. 34002 (25 Treas. Dec., 658).

cartons or packing charges upon an invoice. The particular invoice was of nine cases of feathers, packed in 515 inside boxes, invoiced as follows:

| | | |
|---|---|---|
| S. B. 862–70 | Francs | 5,267.15 |
| 9 cases and packing | | 268.85 |
| 515 inside boxes, 0.60 | | 309.00 |
| Certificate | N. D. | 13.00 |
| | Frcs. | 5,858.00 |

The appraisement was as follows:

Appraiser's notation. S. B. 870 correct. Case as noted; balance classified. April 13, 1910. GWS. A. L. Kline, assistant appraiser. Approved. Geo. W. Wanmaker, appraiser.

Duty was taken accordingly by the collector. Subsequently there came to the attention of the collector a private "debit note" sent importers by the commissionaire, as follows:

| | Francs. |
|---|---|
| 7 per cent commission on frcs. 5,267.15 | 368.70 |
| Add. charges on 515 inside boxes, 0.40 | 206.00 |
| | Frcs. 574.70 |

It appears from the record that the goods were purchased for the importers at a wholesale price by their commissionaire, to whom they were delivered and by whom the goods, which were feathers, were peculiarly packed in inside boxes, for which inside boxes, in part, this additional charge was made. It was therefore strictly a part of the cost or charge of packing the goods in a condition ready for export shipment.

The collector upon being advised of this private memorandum, which was more than a year after appraisement and liquidation, having discovered fraud, as it was claimed, reliquidated the entry by adding 206 francs as additional packing charges, which this debit note admitted were omitted from the consular invoice. The importer protested, and the board, upon the theory that this constituted a reappraisement of the merchandise by the collector, sustained the protest. The Government appeals. It is stipulated in the record that the time of the reliquidation, being more than one year after the original liquidation, shall not be here made an issue. The board said:

The invoice includes an item of 515 boxes at 60 centimes per box. The goods appear to have been appraised by the appraiser at the entered or invoiced value. Subsequent to the appraisal and after the original liquidation it appears that the collector added to the invoiced or appraised value of the goods the amount of 40 centimes per box for the 515 boxes. The value of the boxes is, of course, included in the appraised value of the goods.

It may be said in passing that the appraiser's notation does not necessarily indicate that the value of the boxes was included in his appraised value of the goods. Certainly not as a part of their *per se* value, for he simply approved the invoice valuation which separately stated these values not as a part of the *per se* value of the merchan-

dise, but expressly as packing charges or "inside boxes" independently stated on the invoice. If there was an appraisement of these charges by the appraiser, it was as noted on the invoice as "inside boxes" or cartons and not as a part of the *per se* value of the goods. If we subsequently find, therefore, that it is no part of the appraiser's legal duty and consequent power to appraise such charges, his usurpation of the collector's functions would not be of any legal force. As said by the Supreme Court in Oberteuffer *v.* Robertson (116 U. S., 499, 516) speaking of such action:

Although in form the appraiser added the items for cartons and packing, the action of the customhouse was only a decision of the collector, under section 2931, that the cartons and packing were dutiable costs and charges.

Of course, both the collector and the appraiser derive their respective powers and duties from the statute; and if the statute nowhere invests the appraiser with the power nor prescribes it his duty to appraise the packages, or costs, charges, and expenses of packing the goods in a condition ready for shipment, such are not legal items of his appraisement, and his inclusion of the same in such does not make them legally such or oust the collector of his duty or power under the statute to "ascertain, fix," and "decide" what are, and in a proper place add such to, the actual market value of the goods in his determination of the *dutiable* value of the importation which under the statute he alone determines.

If any doubt exists as to the construction to be given section 18, the clear and precise distinctions observed in all other paragraphs of the law *in pari materia* conclusively indicate that that section defines and relates to *dutiable* value alone, is the sole paragraph enumerating and declaring all the factors upon which "duty shall be assessed" and defining such, and when so read harmonizes all other provisions of the administrative law.

In almost every paragraph of the customs administrative law Congress has plainly evidenced the purpose to separate and hold distinct the actual market value *per se* and the incidental cases and packing charges of imported merchandise, so that the performance of the respective duties of the appraiser and collector might be possible and facilitated. And Congress has equally clearly empowered the appraiser with the duty and confined his authority by express statutory words solely to a determination of the actual market value of the goods *per se* as bought and sold in wholesale quantities in the country of exportation. Equally plainly has Congress empowered the collector alone with the power of determination of what are and what are not "costs and charges." *A fortiori*, what an anomalous condition would be presented if the appraiser may bind the collector in making costs or charges a part of market value, when the legal determination of what are or are not such in the particular case is not under the statute had until after appraisement.

Whether or not costs, charges, and expenses of putting the goods in condition packed ready for shipment are items entering into the· actual market value and wholesale price of imported merchandise to be estimated as such by the appraiser or are separate items, which. though the same may be determined by the appraiser in form are, nevertheless, items of dutiable value and to be so included or excluded by the decision of the collector as the case may require, may be determined by a reading together of all of the provisions of the customs administrative law relating thereto and giving that effect to the whole, which will give some effect to each provision and harmonize all. ·

Section 2 in providing what the invoice shall contain states that it "shall contain a correct, complete, and detailed description of such merchandise, *and* of the packages, wrappings, or other coverings containing it."

Section 3 prescribes that the declaration upon the invoice shall set forth, of the invoice, certain matters and shall certify "if the merchandise was obtained by purchase, * * * the actual cost thereof,· *and* of all charges thereon, * * * and when obtained in any other manner than by purchase, the actual market value or wholesale price thereof, * * * that such actual market value is the price at which the merchandise described in the invoice is freely offered for sale to all purchasers in said markets, and that it is the price which the manufacturer or owner making the declaration would have received, and was willing to receive, for such merchandise *sold in the ordinary course of trade* in the usual wholesale quantities, *and*" that the invoice "includes *all charges* thereon *as provided by this act,* and the actual quantity thereof."

This section affixes the status or condition of the goods, whereupon "actual market value" is to be ascertained as that when such are, "sold in the ordinary course of trade in the usual wholesale quantities" in the country of exportation. This may or may not be in packages or packed. It may and ordinarily is in vastly different· packages than when sold to be exported, distance, heavy wear and tear, possibilities of water damage, and many other elements rendering the export condition "packed ready for shipment" greatly different from that when "sold in the ordinary course of trade" in the· country of exportation. So that the "actual market value" to be determined is not necessarily that including export packages, *does not include such* as defined in this section of the law, but refers to the· merchandise in a probably different status or condition.

Section 5 regulates the several declarations required to be made· upon entry:

(*a*) Under the declaration of consignee, importer, or agent, where· merchandise has been actually purchased, it is required that it shall. state—

That the *invoice* now produced by me exhibits the actual cost * * * of the said· goods, wares, and merchandise, *and includes* and *specifies* the value of all cartons, cases,·

crates, boxes, sacks, casks, barrels, hogsheads, bottles, jars, demijohns, carboys, and other containers or coverings, * * * which are not otherwise specially subject to duty under any paragraph of the tariff act, *and* all other costs, charges, and expenses incident to placing said goods, wares, and merchandise in condition, packed ready for shipment. * * *

(*b*) It requires that the declaration of consignees, importer, or agent, where merchandise has not been actually purchased, shall declare—

That the invoice now produced by me exhibits the *actual market value or wholesale price* at the time of exportation * * * of the said goods, wares, and merchandise, *and includes* and *specifies* the value of all cartons, cases, crates, boxes, sacks, casks, barrels, hogsheads, bottles, jars, demijohns, carboys, and other containers or coverings, * * * *and* all other costs, charges, and expenses incident to placing said goods, wares, and merchandise in condition, packed ready for shipment. * * *

(*c*) It requires that the declaration of owner in cases where merchandise has been actually purchased shall declare—

That the invoice and entry * * * contain a just and faithful account of the actual cost of the said goods, wares, and merchandise, *and include* and *specify* the value of all cartons, cases, crates, boxes, sacks, casks, barrels, hogsheads, bottles, jars, demijohns, carboys, and other containers or coverings, * * * *and* all other costs, charges, and expenses incident to placing said goods, wares, and merchandise in condition, packed ready for shipment, * * *.

(*d*) It further requires that the declaration of manufacturer or owner in cases where merchandise has not been actually purchased shall declare—

That nevertheless the invoice which I now produce contains a just and faithful valuation of the same, at their *actual market value* or wholesale price, * * * in the principal markets of the country from whence imported; * * * that such actual market value is the price at which the merchandise described in the invoice is freely offered for sale to all purchasers in said markets and is the price which I would have received and was willing to receive for such merchandise *sold in the ordinary course of trade and in the usual wholesale quantities;* that the said invoice contains *also* a just and faithful account of all the costs of finishing said goods, wares, and merchandise to their present condition, *and* [said invoice] *includes* and *specifies* the value of all cartons, cases, crates, boxes, sacks, casks, barrels, hogsheads, bottles, jars, demijohns, carboys, and other containers or coverings, * * * which are not otherwise specially subject to duty under any paragraph of the tariff act, *and* [said invoice indicates and specifies] all other costs and charges incident to placing said goods, wares, and merchandise in condition, packed ready for shipment, * * *.

Obviously Congress considered that neither packages nor costs and charges were included in actual market value, else why specify them separately?

If there is any ambiguity in any other section of the law as to what constitutes actual market value, and that it is regarded as separate from packages and costs and charges, this section is clear and unambiguous. It declares what and what alone shall make up actual market value as "the price at which the merchandise described in the invoice is freely offered for sale to all purchasers in said markets and is the price which I would have received and was willing to receive for such merchandise *sold in the ordinary course of*

*trade* in the usual wholesale quantities." This clear and succinct definition of "actual market value" as used by Congress contains no element of packages or charges. They might or might not in some form alike or different from export account be included, but are not affixed as a part of the definition by Congress. Nor did Congress not have such in mind, for it immediately continues in the paragraph differentiating such from market value by requiring their inclusion but separate specification on the invoice.

In Oberteuffer *v.* Robertson (116 U. S., 499, 512) *the forms of these oaths were set out at length and made the foundation in part of the court's opinion* that costs, charges, and expenses, were not to be deemed a part of the market value to be ascertained by the appraiser, but which—

Although, in form, the appraiser added the items for cartons and packing, the action of the customhouse was only a decision of the collector, under section 2931, that the cartons and packing were dutiable costs and charges.

Section 7 defines the cases in which the collector shall submit to the appraiser questions of appraisement and the limitations thereof. It states:

And the collector * * * shall cause the actual market value or wholesale price of such merchandise to be appraised; * * *.

Whenever Congress has spoken of packages and other costs and charges heretofore it does so expressly. Not including such here, this grant of jurisdiction and power to the appraiser does not under any rule of construction invest him with power to appraise that not submitted to him for appraisement, to wit, "packages" or other costs, charges, and expenses.

This definition of the duties and powers of the appraiser concerns the value of the merchandise in the country of exportation, but does not necessarily relate to the same as packed ready for shipment or include the costs, charges, or expenses in so packing the same for shipment. Such a condition of the merchandise may or may not be an element of the actual market value or wholesale price thereof in the country of exportation according to the customs of the particular trade or country. When such they are not appraised as such, but as a necessary element or part of the actual market value of the goods as sold in the ordinary course of trade in the country of exportation.

This section further provides penalties and exactions where the "appraised value" exceeds the entered value. These provisions have never been held to be related to the costs, charges, and expenses or coverings, for they are not *per se* deemed a part of the "actual market value."

Section 10 defines and prescribes the duty of the appraising officers and corresponds with the provisions of section 18 in that it requires

the appraiser or person acting as such "to ascertain, estimate, and appraise * * * the actual market value and wholesale price of the merchandise * * * and the number of yards, parcels, or quantities, and the actual market value or wholesale price of every of them, as the case may require."

Confessedly the appraiser has no jurisdictional powers beyond this prescription of his duties. The invoice is before him. Congress has said in numerous provisions prescribing the form and requirements of that and every valid invoice in detail that it shall set forth the "actual market value" of the merchandise, and shall "include and specify" separately the packages, "and also" the costs, charges, etc. Wherever the latter are intended to be included they are literally described in detail. In this provision, the grant and definition of the powers and duties of the appraiser include only the appraisement of "the actual market value" of the merchandise. Nothing is said, no grant of jurisdiction is given, as to "costs" or "charges." Indeed, the section itself bears the same interpretation, for it speaks of the "actual market value" of each "yard," "parcel," and "quantity," and "every of them," which obviously it would be an absurdity to hold included packages and charges in all or many instances incident to the whole invoice. So it appears that neither in section 8, wherein is defined what shall be submitted to the appraiser for appraisement, nor in section 10, which defines and prescribes his powers, is there any power vested in him over costs, charges, or expenses.

Section 13 governs the report of the appraiser to the collector. It charges that he "shall report to the collector his decision as to the value of the merchandise appraised." And be it particularly noted that it is herein prescribed that where there is no appraiser at a port of entry the officer charged with the "estimating and collection of duties," which is the corresponding officer to the collector, that "the certificate" of such officer "of the dutiable value of any merchandise required to be appraised, shall be deemed and taken to be the appraisement of such merchandise." In this paragraph the distinction is drawn between the duties of the appraiser to appraise the actual market value of imported merchandise and the duties of the collector to affix the dutiable value of imported merchandise. The idea is further carried into the statute wherein it is further provided, that "if the collector shall deem the appraisement * * * too low, he may * * * appeal to reappraisement." Then follows an appeal to re-reappraisement. As the authority and power of the board is coextensive with the authority and power of the appraiser in reviewing his decision as to the market value of the goods, those provisions are significant of what Congress intended he should do under the customs administrative law. It is not provided in the

statute and it has never been contended that the Board of General Appraisers in a reappraisement case pass upon the value of packages and coverings or costs, charges, and expenses, or include them within the appraised value. As with the appraiser, they ofttimes make report to the collector of suggestions, but it is not their legal duty or power.

Indeed, while the learned general appraisers below rested the decision herein as to the finality of appraisement and its binding effect upon the collector upon this section, it would seem that the very provision quoted draws the distinction here made between the duties of the appraiser and collector and excludes all idea of the appraiser's action on an item relating to packing or other costs and charges being final or within his power. The provision reads:

SEC. 13. \* \* \* The decision of the appraiser, or the person acting as such (in case where no objection is made thereto, whether by the collector or by the importer, owner, consignee, or agent), or the single general appraiser in case of no appeal, or of the board of three general appraisers, in all reappraisement cases, shall be final and conclusive against all parties and shall not be subject to review in any manner for any cause in any tribunal or court, *and the collector or the person acting as such shall ascertain, fix, and liquidate the rate and amount of the duties to be paid on such merchandise, and the dutiable costs and charges thereon, according to law.*

After finality of the appraisement and appraiser's action is established by lapse of time, the very section vests in the collector power to thereupon proceed to "ascertain, fix, and liquidate the rate and amount of the duties to be paid on such merchandise, *and the dutiable costs and charges thereon,* according to law." What more ample grant of authority could be couched in language more appropriately placed to show that what are costs and charges are to be "ascertained," "fixed," and determined by the collector and not the appraiser, and that Congress did not deem such entered into the "actual market value" that became final after final appraisement?

Section 14 prescribes the duty of the collector. It states:

That the decision of the collector as to the rate and amount of duties chargeable upon imported merchandise, including [his decision upon] all *dutiable costs and charges*, and as to all fees and exactions of whatever character \* \* \* shall be final and conclusive \* \* \*.

Reading section 14, defining the duties of the collector, together with sections 10, 11, and 13, defining the duties of the appraising officers, clearly distinguishes the respective powers and duties of each.

Section 14 makes the decision of the collector alone final and conclusive as to all dutiable costs and charges. Section 13, expressly, in effect excepts such from the finality of the appraiser's decision, by providing that upon such finality the collector shall proceed to affix and determine such costs and charges, and sections 10 and 11, which alone vest the appraiser with and define his powers, give him no power over costs and charges. It is not a little difficult to understand:

how such provisions in an act creating certain statutory officers and defining their duties, which must be strictly construed, can be held to have vested in the appraiser power to appraise costs and charges and deny the collector any power of decision over such.

Section 14 is in all material particulars identical with section 2931 of the Revised Statutes as construed with section 2906, which is in all respects similar to section 10 of the customs administrative law. In Oberteuffer v. Robertson, *supra*, the Supreme Court said:

The addition of the items for cartons and packing was no part of the duty or function of the appraiser, acting under section 2906, to appraise the foreign-market value of the goods. Although, in form, the appraiser added the items for cartons and packing, the action of the customhouse was only a decision of the collector, under section 2931, that the cartons and packing were dutiable *costs and charges*.

Grant in this case that 60 centimes were properly added to make market value by the appraiser, certainly no one can dispute that the 40 centimes added by the collector were a part at least of packing charges or costs and as such strictly within his legal power to determine should be added to the *dutiable* value of the goods. In such view the question here is, were they properly a part of such and not did he have the legal power to so include them as a part of the *dutiable* value. Everyone concedes that if he had the legal power he acted rightly, and if not the importer escapes payment of just dues owing the Government by concealment.

The facts of this case seem to bring it precisely within the case of Beard v. Porter (124 U. S., 437). The item in controversy in no way affects the appraised value of the goods. The appraisement is not attacked or questioned.

It does not appear that such second liquidation was based at all upon any increase of the values of the *goods* from the invoice values.

The addition and reliquidation concern solely the addition to or inclusion within the *dutiable* value of the goods of an item of costs in packing, 40 centimes for inside boxes. It was therefore a matter strictly within the collector's duties and in no wise affected the appraiser's decision as to the value of the goods *per se*, 5,267.15 francs, which is accepted as correct in the reliquidation. See also United States v. Passavant (169 U. S., 16).

Section 18 provides upon what duty "shall be assessed." It is, therefore, the section defining, not actual market value, which has been previously defined, but *dutiable* value. It states:

*Duty shall be assessed* upon the actual market value or wholesale price thereof [and] that *such* actual market value [upon which duty shall be assessed] shall be held to be the price at which such merchandise is freely offered for sale to all purchasers in said markets, in the usual wholesale quantities, and the price which the manufacturer or owner would have received, and was willing to receive, for such merchandise when sold *in the ordinary course of trade in the usual wholesale quantities,* including the value of all cartons, cases, crates, boxes, sacks, casks, barrels, hogs-

heads, bottles, jars, demijohns, carboys, and other containers or coverings, * * * *and* all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment, * * *.

By the phrase, "*such* actual market value," "such" refers what follows back to "the actual market value" upon which "*duty shall be assessed*" as the *dutiable* "actual market value." This section refers intrinsically and expressly to the collector's duty and actions. The *appraiser* does not *assess duty* upon the imported merchandise; he under section 10 *appraises* the merchandise and the collector alone under sections 13 and 14 *assesses the duty*, and, in so doing, takes into consideration and includes or excludes what may or may not in his judgment amount to coverings or costs, charges, and expenses.

The previous provisions of the statute having in great detail provided that in the invoices and entries the actual market value of the merchandise, as bought, and sold in the country of exportation, should be invoiced and entered separately from the coverings and the value thereof and the costs, charges, and packages and the value thereof; and it likewise being previously provided that the appraiser should appraise the value of the merchandise only and report the same to the collector without vesting in him by statute, which is the limit of his authority, the right to appraise the costs or charges, etc. and it likewise being previously provided by the statute that the collector must decide as to what is costs, charges and expenses, section 18 following defines what is *dutiable* value by enumerating all the factors upon which duty "shall be assessed." In no other provision of the customs administrative law is dutiable value defined which includes costs and charges not incident to the goods in the foreign wholesale markets, and unless this paragraph does so define there is no authority in the law to include as dutiable value in any case as a part of the imported merchandise either coverings, etc., or charges, etc.

The latter part of the provision is not a definition of actual market value, but a reference to the use of those terms in other parts of the statute and the definition thereof as they are "defined in this act," and extends such definitions to include not alone the subject-matter of the actual importation but of "similar merchandise comparable in value therewith." This is a rule of appraisement and not a definition of value. The purpose of this provision was to allow appraising officers in determining value and actual market value and the wholesale price to consider not alone the individual importation and identical merchandise but similar merchandise comparable in value therewith. It renews the proviso to paragraph 16 of the act of 1842, which, in its incorporation in section 19 of the customs administrative law of 1890, as amended in 1897, confined the examinations of appraisers to identical goods, extending such examinations to "similar

merchandise comparable in value therewith," and further extended that latitude of performance of official duty to wherever it was exercised under the whole "act" rather than "section" 18 as was prescribed by the amended act.

The distinction between actual market value, which relates alone to the value of the merchandise *per se*, and dutiable value, which includes that, together with costs and charges, and all other factors upon which duty "shall be assessed" as prescribed in section 18, and that section alone, is clearly drawn by the provisions of section 13.

In this section, as in all other sections of the act, Congress, when speaking of and referring to the merchandise *per se* only (which in the act is the merchandise bought and sold in usual wholesale quantities in the usual course of trade in the country of exportation), uniformly uses the words "the merchandise," or "such merchandise," or the equivalent; and, whenever Congress includes or intends to include "costs and charges," it expressly *mentions such*, as well as "the" or "such" "merchandise." So, after Congress by section 7 empowers the collector to cause to be appraised "such merchandise" (not including costs and charges), and, after the appraiser under section 10 proceeds to "ascertain, *estimate*, and *appraise* * * * the merchandise" (not including costs and charges), the collector may, under section 13, if he "shall deem the *appraisement* of any imported *merchandise*" (not including costs and charges) "too low, * * * appeal to reappraisement." The section continues: "In such cases the general appraiser and boards of general appraisers shall proceed * * * to ascertain, *estimate*, and determine the dutiable value of *the* imported *merchandise*" (not of costs and charges). "Costs and charges" were not submitted to the appraiser for appraisement under section 7, were not a part of the appraisement under section 10, and not the subject of appeal by the collector who appeals solely from the "appraisement" under section 13.

What an incongruous act this would be if construed that costs and charges were included in the appraisement and made final by the decisions of the appraisers under the first part of section 13, while, at the same time, the latter part of that section directs that the collector shall "ascertain, fix, and liquidate" "the dutiable costs and charges," which "decision" by the collector is by the following sentence, the first of section 14, made final as to "all dutiable costs and charges" in the absence of appeal.

Were there nothing more in the act to show that the "dutiable market value" made final by section 13 refers alone to the merchandise *per se*, as above defined, the last sentence of the section, that *the collector* shall "ascertain" and "fix * * * all the dutiable costs and charges," would suffice. Certainly Congress did not

intend such to be ascertained, etc., and be made final by both the decision of the appraiser and collector.

In the same section we have "dutiable" market value "ascertained and *determined*" by the appraiser and "dutiable" costs and charges to be "ascertained and *fixed*" by the collector. How can it be said Congress intended the former should perform this office thus prescribed for the latter? What warrant is there in this section for holding that the former must or can perform the latter duty? If the "costs and charges" were included in "appraisement," then dutiable value would be an *appraised* open-market value, and that value the subject of contest on appeal to reappraisement regardless of actual cost. They are not and never have been held such. They are the subject of ascertainment, fixing, and determination not of a *value*, but of actual *cost*. This section, therefore, speaks only of the value of the merchandise *per se*, which becomes "dutiable value" because binding upon the collector as one of the factors in his determination of the value upon which duty shall be assessed. Such, however, is but *one* of the factors going to make up dutiable value of every invoice of "*imported merchandise* * * * subject to an ad valorem rate of duty" under section 18 of the act, which section alone enumerates all the factors or values which must be determined and fixed by the collector as the basis upon which duty "shall be assessed," or dutiable value.

While in the foregoing we have assumed that the appraisement may legally extend beyond a unit value to the aggregate value of the merchandise, such is not here decided. That may be and has here been assumed as unnecessary of decision in this case.

The whole framework of the customs administrative law, therefore, it would seem, is in harmony and differentiates between actual market value and *dutiable* actual market value, making the former the duty of the appraising officer, and the decision of and ascertainment of the latter the duty of the collector.

There is nothing in United States *v.* Francklyn (4 Ct. Cust. Appls., 54; T. D. 33306) contrary to the above suggestions. Indeed, it was said in that case:

As affecting the question here involved, subsection 18 of section 28 of the present tariff act is not to be distinguished from section 19 of the customs administrative act of 1890.

The whole question in the Francklyn case was whether or not the value of the coverings was included in the value of the cement for dutiable purposes. It was held by the court, *under facts of the particular case*, that they were properly so included. The question of the respective rights and duties of appraising officers and collectors was in no sense directly or indirectly involved.

The case of United States v. Calhoun (184 Fed., 499) is more an authority for the above contention than against it. Therein Judge Hand draws a concise distinction between the duties of the appraiser and the duties of the collector. That case is an authority that the collector can not appraise, but that his duties are those pertaining to liquidations alone, which may involve the addition or rejection of coverings or charges, according as the facts may develop that they were or were not included in the value of the merchandise as purchased, or may include the application of some other rate of duty to the importation than that previously applied.

Reading all of the provisions of the law together so as to give harmonious effect to the whole act and adopting that construction that continues in the Government power to recoup its revenues against fraudulent invoices after appraisement becomes final without the least invasion of the rights of any honest importer, the board must be held to have erred.

We would be quite content to rest our conclusion herein upon this analysis of the existing statutes without further extending a discussion already beyond requirements; but the urgent insistence of counsel for appellees, supported by certain exceedingly well considered opinions by the board that the legislative and judicial history of the customs administrative act leads to a contrary conclusion and the great importance of the subject demand some review of these subjects.

The provisions of section 16 of the act of 1842 and of the Revised Statutes ancestral to those of the customs administrative law now in effect, so far as relating to and controlling the issues in this and previous like cases are essentially, if not literally, the same as the latter.

Section 16, in so far as pertinent, read (A and B are our segregations for facility of consideration) as follows:

(A) SEC. 16. *And be it further enacted,* That in all cases where there is or shall be imposed any ad valorem rate of duty on any goods, wares, or merchandise imported into the United States, and in all cases where the duty imposed shall by law be regulated by, or directed to be estimated or based upon, the value of the square yard, or of any specific quantity or parcel of such goods, wares, or merchandise, it shall be the duty of the collector within whose district the same shall be imported or entered to cause the actual market value or wholesale price thereof, at the time when purchased, in the principal markets of the country from which the same shall have been imported into the United States, or of the yards, parcels, or quantities, as the case may be, to be appraised, estimated, and ascertained, and to such value or price, to be ascertained in the manner provided in this act, shall be added all costs and charges, except insurance, and including, in every case, a charge for commissions at the usual rates, as the true value at the port where the same may be entered upon which duties shall be assessed.

(B) And it shall, in every such case, be the duty of the appraisers of the United States, and every of them, and every person who shall act as such appraiser, or of the collector and naval officer, as the case may be, by all reasonable ways and means in his

or their power, to ascertain, estimate, and appraise the true and actual market value and wholesale price, any invoice or affidavit thereto to the contrary notwithstanding, of the said goods, wares, and merchandise, at the time purchased, and in the principal markets of the country whence the same shall have been imported into the United States, and the number of such yards, parcels, or quantities, and such actual market value or wholesale price of every of them, as the case may require; * * *.

Sec. 5, Statutes at Large, 563.

It will be noted that our subdivision A provided for the addition of costs, charges, *and commissions* by the collector, stating of such that "it shall be the duty of the collector." (This provision omitting commissions later became in substance a part of section 13 of the customs administrative law.)

It will be noted that our subdivision B defined the duties of appraising officers and that the same has no reference whatsoever to costs, charges, or commissions. (This provision later became section 10 of the customs administrative law.)

An appeal in classification cases from the decision of the collector was allowed and the decision of the collector of customs made final as to the rate and amount of duty to be paid "and the dutiable costs and charges thereon," in the absence of appeal, by sections 14 and 15 of the act of 1864 (13 Stat. L., 214, 215).

Section 15 read:

*And be it further enacted,* That the decision of the respective collectors of customs as to all fees, charges, and exactions of whatever character, other than those mentioned in the next preceding section, * * * shall be final and conclusive against all persons interested in such fees, charges, or exactions. * * *

The corresponding provisions of the Revised Statutes in the course of enactment preceding the customs administrative law were as follows:

SEC. 2902. It shall be the duty of the appraisers of the United States, and every of them, and every person who shall act as such appraiser, or of the collector and naval officer, as the case may be, by all reasonable ways and means in his or their power, to ascertain, estimate, and appraise the true and actual market value and wholesale price, any invoice or affidavit thereto to the contrary notwithstanding, of the merchandise, at the time of exportation, and in the principal markets of the country whence the same has been imported into the United States, and the number of such yards, parcels, or quantities, and such actual market value or wholesale price of every of them, as the case may require. * * *

SEC. 2906. When an ad valorem rate of duty is imposed on any imported merchandise, or when the duty imposed shall be regulated by, or directed to be estimated or based upon, the value of the square yard, or any specified quantity or parcel of such merchandise, the collector within whose district the same shall be imported or entered shall cause the actual market value, or wholesale price thereof, at the period of the exportation to the United States, in the principal markets of the country from which the same has been imported, to be appraised, and such appraised value shall be considered the value upon which duty shall be assessed.

SEC. 2907. In determining the dutiable value of merchandise, there shall be added to the cost, or to the actual wholesale price or general market value at the time of exportation in the principal markets of the country from whence the same has been

imported into the United States, the cost of transportation, shipment, and transshipment, with all the expenses included, from the place of growth, production, or manufacture, whether by land or water, to the vessel in which shipment is made to the United States; the value of the sack, box, or covering of any kind in which such merchandise is contained; commission at the usual rates, but in no case less than two and a half per centum; and brokerage, export duty, and all other actual or usual charges for putting up, preparing, and packing for transportation or shipment.   *   *   *

SEC. 2931. On the entry of any vessel, or of any merchandise, the decision of the collector of customs at the port of importation and entry, as to the rate and amount of duties to be paid on the tonnage of such vessel or on such merchandise, and the dutiable costs and charges thereon, shall be final and conclusive against all persons interested therein.   *   *   *

It will be noted that in the Revised Statutes the determinative duties of the collector and appraiser, those of both of which were prescribed in section 16 of the act of 1842, were divided, that of the appraiser being set forth in section 2902 of the Revised Statutes and that of the collector in sections 2906, 2907, and 2931.

Epitomized, section 2902 prescribed the duties of appraising officers, while section 2906 directed that the collector should cause an appraisement to be made; section 2907 expressly empowered him to add to the appraised value determined by the appraising officers under section 2902 all costs, charges, and expenses, etc., while section 2931 expressly made the decision of the collector final as to all dutiable costs and charges upon imported merchandise.

These provisions after the act of 1883 were essentially and almost literally carried into the various provisions of the administrative law.

In section 7 it is, as it was in section 2906, provided:

The collector within whose district any merchandise may be imported or entered, whether the same has been actually purchased or procured otherwise than by purchase, shall cause the actual market value or wholesale price of such merchandise to be appraised.

By section 10 it is, as it was in section 2902, provided:

SEC. 10. That it shall be the duty of the appraisers of the United States, and every of them, and every person who shall act as such appraiser, or of the collector, as the case may be, by all reasonable ways and means in his or their power to ascertain, estimate, and appraise (any invoice or affidavit thereto or statement of cost, or of cost of production to the contrary notwithstanding) the actual market value and wholesale price of the merchandise at the time of exportation to the United States, in the principal markets of the country whence the same has been imported, and the number of yards, parcels, or quantities, and actual market value or wholesale price of every of them, as the case may require.

This provision is *pro tanto* identical in language with section 2902 of the Revised Statutes and our subdivision "B" of the act of 1842, defining the duties of appraising officers.

By section 13 of the customs administrative law it is provided, as to final appraisement or re-reappraisement as in section 2907, that—

The collector or person acting as such shall ascertain, fix, and liquidate the rate and amount of duties to be paid on such merchandise, and the dutiable costs and charges thereon, according to law.

This is essentially and almost literally the provision of section 2907 of the Revised Statutes and our subdivision "A" of the act of 1842.

Finally, by section 14 of the customs administrative law, it is provided—

That the decision of the collector as to the rate and amount of duties chargeable upon imported merchandise, including all dutiable costs and charges, and as to all fees and exactions of whatever character, * * * shall be final and conclusive.

This is essentially, if not literally, the provisions of sections 14 and 15 of the act of 1864 and section 2931 of the Revised Statutes.

What was the judicial construction of these former acts?

Of these provisions the Supreme Court in Oberteuffer *v.* Roberton (116 U. S., 499), said:

The addition of the items for cartons and packing was no part of the duty or function of the appraiser, acting under section 2906, to appraise the foreign market value of the goods. Although, in form, the appraiser added the items for cartons and packing, the action of the customhouse was only a decision of the collector, under section 2931, that the cartons and packing were dutiable costs and charges.

This legislative status was the subject of the *obiter* expressions in G. A. 6082 (T. D. 26514), majority opinion by Judge Waite, Judge Somerville dissenting, the reasoning of which majority opinion was urged with much force by counsel for appellees in this court, wherein is asserted a difference in the early law from the present. That decision was rested upon the statement that prior to the customs administrative act of 1890 the laws in force required that the various charges should be added to the costs or market value, whereas by the customs administrative law, as subsequently amended, such is not required. A comparison of all the acts *in pari materia* shows that this assumption by Judge Waite as to former acts must be limited to the subject matter before him, to wit, commissions, and that his conclusions as to costs and charges and commissions under the customs administrative law were subsequently in effect disapproved by superior authority. N. Erlanger, Blumgart & Co. *v.* United States (154 Fed., 949). The opinion follows with a quotation from section 16 of the act of 1842, which is our "A," *supra*, and which expressly requires the collector to add costs, charges, and commissions. This is followed in contrast by the quotation of sections 10 and 19 of the present law upon that subject and the statement by the learned general appraiser for the board that there is therein no requirement that the collector shall add costs and charges. This position overlooks the fact that section 10 is our part "B" and not "A" of the act of 1842, *while his previously quoted portion of section 16 is in effect incorporated in and made a part of section 13 of the customs administrative law.* By both our part "A" of section 16 of the act of 1842 and the concluding part of section 13

of the customs administrative law it is statutorily required that "the collector or the person acting as such shall *ascertain, fix,* and liquidate the rate and amount of the duties to be paid on such merchandise *and the dutiable costs and charges thereon,* according to law," and negatives the alleged difference in the statutes. While the corresponding provision of the Revised Statutes, section 2907, does not declare in terms what officer shall add costs, charges, and expenses to the appraised value, it was declared in Oberteuffer v. Robertson that section 2931 of the Revised Statutes, which is essentially the same as, if not identical with section 14 of the customs administrative law, vested that power solely in the collector of customs.

It will be further noted that section 2906 of the Revised Statutes, which is *pro tanto* in all material parts identical with section 10 of the customs administrative law, which alone defines the duties of the appraising officers, was declared by the Supreme Court in Oberteuffer v. Robertson, *supra,* not to empower the appraising officer, but to empower the collector alone to add costs, charges, and expenses.

It will likewise be noted that the question in G. A. 6082 (T. D. 26514), majority opinion by Judge Waite, was essentially different from the question in this record. This is a fact which should be clearly borne in mind. That case with all the other commissions cases, which were the subject of extended litigation covering a period of many years before the board and in the courts, involved questions where the collector had added an item upon the invoice which the appraiser had included within the appraised value of the merchandise *per se* in order to make market value. Note particularly that in those cases the appraisement included the disputed item, and the question was whether or not the collector had the right to go into the appraisement as found by the appraiser and take an item therefrom and add it to the appraised value as found by the appraiser. This case is entirely different.

The collector here did not invade the findings of the appraiser by segregating therefrom an item which the appraiser had included to make market value, nor did the collector without evidence, save the invoice, add an item upon the invoice to the appraised value, but upon evidence in the record disclosing an item of 40 centimes not of the *per se* value of the goods, nor of their value as sold in usual wholesale quantities in the country of exportation, an item confessedly of packing charges which had not been considered by the appraiser and which was not before him at the time of appraisement, but which was before the collector alone long thereafter upon the admissions of the importer himself, the collector added as packing charges. There was no interference with or change of the invoice, entered or appraised valuation. So we have here no question of the collector taking an item out of the *appraised* value or in any wise affecting, modifying,

or changing the appraised value, but the simple exercise by the collector of his statutory right of adding to the appraised value to make *dutiable* value that which all parties to the record concede to be an item of packing charges—cartons—one of the enumerated classes of such by sections 13, 14, and 18 made the subject of the collector's decision.

Moreover, section 18 does not define the official duties of either appraisers or collectors. It prescribes a rule of assessment in the first instance, defining upon what duty shall be assessed; and, in the concluding paragraph, a rule of appraisement authorizing appraisers to consider similar merchandise comparable in value.

The duties of the appraisers, so far as determining value is concerned, are prescribed, limited, and defined by section 10. That section is *verbatim et literatum* taken from section 16 of the act of 1842 and section 2902 of the Revised Statutes, of which the Supreme Court in Oberteuffer *v.* Robertson, *supra*, said:

> The addition of the items for cartons and packing was no part of the duty or function of the appraisers. * * *

The duties of the collector, so far as here pertinent, are prescribed and limited by sections 13 and 14, which were sections 14 and 15 of the customs administrative law of 1890, as amended in 1897, and as considered by the Supreme Court in United States *v.* Klingenberg (153 U. S., 100–104), and in all essential particulars the same as section 2931 of the Revised Statutes. Sections 13 and 14 of this act and 13, 14, and 15 of the prior act are, so far as here pertinent, *in haec verba*. Of these the Supreme Court in United States *v.* Klingenberg, *supra*, said:

> Under a proper construction of sections 14 and 15 of the act of June 10, 1890, it can not be held that the right of review by the Circuit Court is limited and confined, as contended by the appellee, to the two subjects of classification and the rate of duty. By section 14 the collector's decision on rate and amount of duties, including all dutiable costs and charges, and as to all fees and exactions of whatever character (except duties on tonnage), may be the subject of appeal to the Board of General Appraisers. The subjects of review by the Circuit Court, provided for by section 15, extend to all questions of law and fact in respect to which the Board of General Appraisers have appellate jurisdiction, except the decision of that board as to the dutiable value of merchandise, which is provided for by section 13, and is made conclusive against all parties interested.

The court here declared that the determination of costs and charges was not an appraiser's duty, final under section 14 (here 14), but was a collector's function under section 15 (here 14), and therefore reviewable by the courts.

So in Oberteuffer *v.* Robertson, *supra*, speaking of section 2931 of the Revised Statutes, the Supreme Court said:

> Although, in form, the appraiser added the items for cartons and packing, the action of the customhouse was only a decision of the collector, under section 2931, that the cartons and packing were dutiable costs and charges.

The Oberteuffer case defining the appraiser's duties, and that and the Klingenberg cases declaring those of the collector, plainly settle what of the rules prescribed by section 18 shall be performed by these respective officials, and that the ascertainment and fixing of dutiable "costs and charges" are solely within the powers of the collector and accord with the deductions previously drawn by us from the language of the act.

Whatever construction may be put upon the latter part of section 18, declaring that the words "value," or "actual market value," or "wholesale price" whenever used in this act shall be construed to be "the actual market value or wholesale price of such, or similar merchandise comparable in value therewith, *as defined in this act*," whether such be construed simply as a rule extending the classes of goods that may be examined by appraisers or as a reference definition of "actual market value," the extension of that reference from the provisions of the "section" to those of the whole "act" by the act of 1909 would seem to conclude the question that Congress had written the definitions of "actual market value" therein referred to, not in section 18 alone, if at all, but also in other parts of the act. This exact provision in the amended act (section 19 customs administrative law of 1890, as amended in 1897) read:

That the words "value" or "actual market value" whenever used in this act * * * shall be construed to be the actual market value or wholesale price *as defined in this section.*

"This section" was "section 19" (here 18). By amendment in 1909 these words were made to read "as defined in *this act*." Why did Congress change the reference from "this section" to "this act"? It could be for no other reason than that Congress deemed that it had, if you please, defined actual market value in other places in the act than in this "section" and that the words should take their meaning not from the language of section 18 alone, if at all, but from the whole act. Now, it so happens that "actual market value" is defined in section 3, and at least four times in section 5, not to say that it is distinguished from "costs and charges" in sections 10 and 13 of "this act." At least we have for this the authority of the Supreme Court, which in the Oberteuffer case looked to the provisions precisely alike those of section 5 to, and therefrom did, determine what Congress meant by the words "actual market value." The court then proceeded to further declare that section 2902 of the Revised Statutes, which was identical with section 10 of the present act, did not empower the appraiser to consider costs and charges. Then followed the Klingenberg case, where sections 13, 14, and 15 of the here amended act, which are identical with sections 13 and 14 of this act, were construed. The court there declared of section 14 as to "costs and charges," "this section clearly allows and provides for

an appeal by the importer from the decision of the collector as to both rate and amounts of duty, *as well as dutiable costs and charges,* and as to all fees and exactions," and pointed out that if such were within the appraiser's duties, under section 13, they would become final and conclusive under that section and not be the subject of an appeal from the collector's decision.

With these constructions of the other parts of the "act" before it Congress reenacted them literally, and in its changes in section 18 expressly by amendment provided that these adjudicated definitions should be considered in determining what Congress meant by the words "actual market value." How, therefore, can we now say they should be excluded from that consideration?

If, therefore, we respect that fundamental statutory principle of reading all parts of the act together and adopting that construction that harmonizes the whole and gives some effect to all parts of the act, but one conclusion follows:

It would seem to us that in the interest of both fairness to honest and the protection of the revenues against dishonest importers this must be a welcome rule.

If we hold that an appraising officer's return can include costs and charges, he may by any sort of general return which conceals the fact of such inclusion defeat any inquiry into such by an appeal directed at his decision, as there would be no remedy for the importer for such by direct appeal from the collector's decision. See N. Erlanger, Blumgart & Co. *v.* United States (154 Fed., 949).

On the other hand, if there were fraud as to such upon part of the importer, undiscovered for the brief period of appealable appraisement, the Government would be without remedy.

We think that the conclusion in this very important case not only accords with the interpretation of the law by the Supreme Court extending over a period of many years, and gives effect to and harmonizes all provisions of the act, prevents injustice to honest importers, and conserves the powers of recoupment in the Government against dishonest ones.

*Reversed.*

---

### DISSENTING OPINION.

MONTGOMERY, *Presiding Judge:* I find myself unable to assent to the conclusion reached by the majority of the court in this case. I take it that it is conceded that a decision of the appraiser acting as such, and proceeding within correct principles of law in a matter committed to his judgment, is final and concludes both the importer and the collector.

I think there is no disagreement either that in carrying into effect the provisions of section 7, which provides that merchandise shall not

be admitted at less than invoice or entered value, the collector must of necessity ascertain what the invoice and entered value is, and if it consists of the *per se* value of the goods, and also the value of cartons, cases, charges, etc., that these are the subject of ascertainment by him.    See United States *v.* Passavant (169 U. S., 16).

The real question in this case is whether the duty imposed upon the appraiser to fix the value of imported merchandise includes the duty of appraising as a part of the value the cost of cartons, cases, and other charges.    The importers contend that the value to be fixed by the appraiser does include these items, and that therefore in the absence of an appeal the collector is concluded from going back of the finding of the appraisers.    The Government, on the other hand, distinguishes between the *per se* cost of the goods imported and the charges mentioned.

The duty is therefore devolved upon the court of construing the statute.    The statute itself, in the absence of uncertainty or ambiguity, is our guide.    If there be ambiguity or conflict in its provisions, it is our duty to reconcile them as well as may be.

Let us take the statute as we find it.    Subsection 10 of section 28 of the act of 1909 reads as follows:

That it shall be the duty of the appraisers of the United States, and every of them, and every person who shall act as such appraisers (or of the collector, as the case may be), by all reasonable ways and means in his or their power to ascertain, estimate, and appraise *the actual market value and wholesale price of the merchandise at the time of exportation to the United States, in the principal markets of the country whence the same has been imported,* and the number of yards, parcels, or quantities, the actual market value or wholesale price of every of them, as the case may require.

Subsection 18 provides:

That whenever imported merchandise is subject to an ad valorem rate of duty, or to a duty based upon or regulated in any manner by the value thereof, the duty shall be assessed upon the *actual market value or wholesale price thereof, at the time of exportation to the United States,* in the principal markets of the country from whence exported; that such actual market value *shall be held to be the price* at which such merchandise is freely offered for sale to all purchasers in said markets, in the usual wholesale quantities, and the price which the manufacturer or owner would have received, and was willing to receive, for such merchandise when sold in the ordinary course of trade in the usual wholesale quantities, *including* the value of all cartons, cases, crates, boxes, sacks, casks, barrels, hogsheads, bottles, jars, demijohns, carboys, and other containers or coverings, whether holding liquids or solids, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, * * *.    That the words *"value,"* or *"actual market value,"* or *"wholesale price,"* whenever used in this act, or in any law relating to the appraisement of imported merchandise, *shall be construed* to be the actual market value or wholesale price of such, or similar merchandise comparable in value therewith, *as defined in this* act.

It is difficult to conceive where these two sections, read by themselves, can be said to be ambiguous.    One section imposes the duty upon the appraiser of appraising the actual market value and whole-

sale price of merchandise at the time of exportation to the United States. Another section says that the actual market value shall be construed to be the "actual market value or wholesale price of such or similar merchandise * * * as defined in this act."

We turn then to provisions of the act to ascertain if there be any definition of actual market value, and we find in the same subsection Congress dealing with actual market value, and declaring that "duty shall be assessed upon the actual market value or wholesale price thereof," and that "such actual market value shall be held to be the price at which such merchandise is freely offered for sale," etc., "including the value of all cartons, cases," etc. Elaboration does not add to the force of the language employed. Actual market value is to be appraised. Actual market value *whenever* used in the act is to mean such actual market value as defined. The defined actual market value is actual market value which includes the value of cartons, cases, charges, etc., and no other actual market value. It seems to me that there is no escape from this conclusion.

But in the main opinion it is said of subsection 18:

It states: "Duty shall be assessed upon the actual market value or wholesale price thereof" and "that *such* actual market value" (upon which duty shall be assessed) "shall be held to be the price," etc. * * * By the phrase "*such* actual market value," "such" refers what follows back to "the actual market value" upon which "*duty shall be assessed*," as *dutiable* "actual market value." This section refers intrinsically and expressly to the collector's duty and actions.

And throughout the opinion an attempt is made to distinguish between the actual market value as such and so-called *dutiable* actual market value. Such purpose, however, is not indicated by the paragraph itself. In the first place, one has to import the word "dutiable" bodily into the text in order to justify such construction. It is true that the provision reads that the duty shall be assessed upon the actual market value, but it proceeds to define then what this actual market value is, and is the only place in the statute in which there is so specific a definition of actual market value.

But this is not all. Congress has not made any such distinction between assessable market value and dutiable market value as might be inferred from the reasoning of the main opinion. Quite the reverse. If we turn to subsection 13 we find:

If the collector shall deem the appraisement of any imported merchandise too low, he may, within sixty days thereafter appeal to reappraisement, which shall be made by one of the general appraisers, or if the importer, owner, agent, or consignee of such merchandise shall be dissatisfied with the appraisement thereof, and shall have complied with the requirements of law with respect to the entry and appraisement of merchandise, he may within ten days thereafter give notice to the collector in writing of such dissatisfaction. The decision of the general appraiser in cases of reappraisement shall be final and conclusive as to the *dutiable* value of such merchandise.

And again in the same section, after providing for an appeal and referring to the action of the board, it is provided:

In such cases the general appraiser and boards of general appraisers shall proceed by all reasonable ways and means in their power to ascertain, estimate, and determine the *dutiable* value of the imported merchandise.  * * *

And then providing that—

The decision of the appraiser, or the person acting as such (in case where no objection is made thereto either by the importer, owner, consignee, or agent) or the single general appraiser in case of no appeal, or of the board of three general appraisers in all reappraisement cases shall be final and conclusive against all parties and shall not be subject to review in any manner for any cause in any tribunal or court.  * * *

So that it is apparent that it will not do to say that the Congress has, in the act in question, distinguished between actual market value as defined by section 18 and *dutiable* market value.

But it is further suggested that the latter part of subsection 13, defining the duties of the collector, conferred upon him the duty of ascertaining the costs and charges dutiable by law.   The clause reads as follows:

The collector or the person acting as such shall ascertain, fix, and liquidate the rate and amount of the duties to be paid on such merchandise, and the dutiable costs and charges thereon, according to law.

It must at least be conceded by anyone who reads this clause that it is quite as consistent with the view that the appraisers fix as dutiable costs and charges the actual market value as defined by subsection 18 as to hold that it confers the duty of fixing the costs and charges upon the collector.   The duty imposed upon the collector here is a duty to ascertain, fix, and liquidate the rate and amount of duties.   To be paid on what?   On such merchandise and on the dutiable costs and charges thereon according to law.   Now such merchandise, and the dutiable costs and charges thereon according to law, all come under one head as the actual value for dutiable purposes as fixed by the Board of General Appraisers.   It will not do to say that the collector liquidates the *rate and amount of dutiable costs and charges*.   What he liquidates is the rate and amount of *duties*, and it is by a strained construction that this clause is given any other meaning.

Subsection 14 is also cited, which reads:

That the decision of the collector as to the rate and amount of *duties chargeable* upon imported merchandise, including all dutiable costs and charges, and as to all fees and exactions of whatever character,  * * *   shall be final and conclusive.  * * *

This, likewise, is open to a construction wholly consistent with the views I have expressed as to subsection 10 and subsection 18, and more consonant therewith than with any other view that could be maintained.   The decision of the collector here referred to is as to the *rate* and *amount* of duties chargeable upon imported merchandise, which rate and amount of duties are chargeable upon such imported merchandise, including the dutiable costs and charges, the assessment

of which is provided for by the other provisions of the statute. The only other subject as to which the decision of the collector is made conclusive is indicated by the conjunction "and." His decision is therefore conclusive under the terms of this section as to "the rate and amount of duties   *   *   *   *   *and* as to all fees and exactions of whatever character," which clearly refer to fees and exactions for service.

Reliance is placed upon the cases of Oberteuffer *v.* Robertson (116 U. S., 499), Beard *v.* Porter (124 U. S., 437), and United States *v.* Passavant (169 U. S., 16). And it is said that these authorities distinguish between appraisement and ascertainment; that the value of the goods *per se* is to be appraised; but that the charges are simply ascertained.

In Oberteuffer *v.* Robertson the court had under consideration a statute which provided (sec. 2906 of the Revised Statutes) that—

When an ad valorem rate of duty is imposed on any imported merchandise, or when the duty imposed shall be regulated by, or directed to be estimated or based upon, the value of the square yard, or of any specified quantity or parcel of such merchandise, the collector within whose district the same shall be imported or entered shall cause the actual market value, or wholesale price thereof, at the period of the exportation to the United States, in the principal markets of the country from which the same has been imported, to be appraised, and such appraised value shall be considered the value upon which duty shall be assessed.

By the act of July 28, 1866, a section was added which provided—

In determining the dutiable value of merchandise, there shall be added to the cost, or to the actual wholesale price or general market value at the time of exportation in the principal markets of the country from whence the same has been imported into the United States, the cost of transportation, shipment, and transshipment, with all the expenses included, from the place of growth, production, or manufacture.   *   *   *

And it was provided that—

All additions made to the entered value of merchandise for *charges* shall be regarded as part of the actual value of such merchandise.   *   *   *

This was followed in 1883 by an act which repealed certain previous sections and proceeded:

*   *   *   And hereafter none of the charges imposed by said sections or any other provisions of existing law shall be estimated in ascertaining the value of goods to be imported, nor shall the value of the usual and necessary sacks, crates, boxes, or covering of any kind be estimated as part of their value in determining the amount of duties for which they are liable.   *   *   *

It was said by the court:

This repeals the provisions of section 2907 that, in determining the dutiable value of the merchandise, there shall be added to its appraised market value (to be ascertained under section 2906, which is left unrepealed), the expenses and charges mentioned in section 2907, among which are "the value of the sack, box, or covering of any kind."   *   *   *

The items thus specified in section 2907 of the Revised Statutes, and in section 14 of the act of 1874, being charges, and being eliminated as part of the dutiable value of goods, and section 2906 remaining for the appraisement of the goods *per se*, without the addition of any of the charges so abolished, it would seem that the meaning of section 7 of the act of 1883 was plain.

But that section goes on to say: "And hereafter none of the charges imposed by said sections or any other provisions of existing law shall be estimated in ascertaining the value of goods to be imported." Nothing is imposed by section 2907 of the Revised Statutes but the addition to the appraised market value, provided for by section 2906, of the items specified in section 2907, all of which are thus declared by section 7 of the act of 1883 to have been "charges." Those charges are no longer to be added or estimated, as before, in determining the dutiable value of the goods. So, the repealed section 14 of the act of 1867 imposed nothing except in respect of the items it specified, which were items to be added to appraised market value, and are, therefore, declared by section 7 of the act of 1883 to have been "charges."

The court thereupon determined that in view of this legislation it was not competent for the assessor to include as a part of the appraised value the value of the cartons and cases, a conclusion which is irresistible in view of the legislation. But it will be observed that stress was laid in this case upon the fact that the repeal of the act of 1883 had referred to these items specifically as charges to differentiate them from appraised value. Perhaps the case may be said also to be an authority for the proposition that under the state of the law as it then existed the appraisal was to be limited to the *per se* value of the goods.

The case of Beard *v.* Porter was a case in which the language used was dictum and the case arose under the same statutes considered in Oberteuffer *v.* Robertson.

United States *v.* Passavant arose under the customs administrative act of June 10, 1890. It was held in that case that—

Under section 7 the collector is to determine for himself the question of what is the *invoice* value of the goods, and in doing this he may add such charges as he considers to be dutiable, but his decision in this respect is not in the nature of an appraisement and may be attacked by protest. And while the general rule is that the valuation is conclusive upon all parties, nevertheless the appraisement is subject to be impeached where the appraiser or collector has proceeded on a wrong principle contrary to law or has transcended the powers conferred by statute.

This ruling was followed by this court in Stein *v.* United States (1 Ct. Cust. Appls., 36; T. D. 31007) and 1 Ct. Cust. Appls., 478 (T. D. 31525) and was reaffirmed in United States *v.* Bauer (3 Ct. Cust. Appls., 343; T. D. 32627).

It was held in the Passavant case that—

Whether the dutiable value in this case was erroneously increased by the unauthorized addition of an independent item to the market value, as asserted by the importers, was a question of law and properly carried to the Board of General Appraisers by protest and appeal.

The case does not, as I read it, support the contention of the Government.

The case of United States *v.* Klingenberg (153 U. S., 93) presented no such question as that here involved. At page 102 of the case the question therein involved was distinctly stated as follows:

The action of the collector in the present case did not relate either to the classification of the goods or to the rate of duty imposed thereon, but, as conceded by counsel for the appellee, merely increased the amount of duties to be paid by the importer

to 'the extent of the difference between $0.32 as the value of the silver florin and $0.482 as the value of the gold florin in the currency of account of the United States. This involved no dispute between the parties as to either classification or rate of duty or the dutiable value of the imported merchandise. But it did involve the proper construction of the law, as embodied in section 52 of the tariff act of 1890, and the estimate of the florin as made by the Director of the Mint and as proclaimed by the Secretary of the Treasury on July 1, 1892, made in pursuance thereof.

Whatever was said, therefore, in this case in discussing the various sections of the tariff act of 1890 must be regarded as dictum. On page 101 it was said:

Section 14 provides that the decision of the collector as to the "rate and amount of duties, * * * including all dutiable costs and charges, and as to all fees and exactions of whatever character, except duties on tonnage, shall be final and conclusive," unless the importer appeals to the Board of General Appraisers. This section clearly allows and provides for an appeal by the importer from the decision of the collector as to both rate and amount of duties, as well as dutiable costs and charges, and as to all fees and exactions.

As before stated, this is in no way essential to a decision of the case and occurs in the course of the process of stating the various sections of the act. As I have pointed out, the more obvious construction of this paragraph is that which accords to the language— "the decision of the collector as to the rate and amount of duties chargeable upon imported merchandise, including all dutiable costs and charges," the meaning clearly imported, *i. e.*, that the decision shall relate to the *amount* of duties which are chargeable upon the imported merchandise, which merchandise includes all dutiable costs and charges. Two things are left to the decision of the collector in this paragraph: One is the rate of duties. The other is the amount of duties, and in ascertaining the amount of duties confessedly the rate must be spread upon not only the merchandise *per se*, but all dutiable costs and charges named in paragraph 18. If this be not so, this court certainly was in error in United States *v.* Francklyn (4 Ct. Cust. Appls., 54; T. D. 33306), and the various decisions there cited were also in gross error.

The question here involved was ably discussed by Judge Waite in the case *In re* Claflin, G. A. 6082 (T. D. 26514), in which the distinction between the act of 1890, corresponding in the main features with the existing statute, and those under review in the cases cited was considered.

In the matter of Newman & Co. (T. D. 14929), in construing section 19 of the act of July 10, 1890, in which case cloths were dutiable according to their value by the square yard, the board said:

In determining the value of merchandise subject to an ad valorem duty, section 19 aforesaid requires the appraiser to include the amount of all costs and charges as therein specified.

In the matter of the Supplee Hardware Co. (T. D. 16806) the board had under consideration paragraph 138 of the act of 1894, which provided a sliding scale of duties on penknives and pocketknives, de-

pendent upon the value per dozen. The merchandise in question consisted of pocketknives invoiced at less than 50 cents per dozen, but with the value of the cases added and proportionately distributed, made the cost and appraised value of the invoice to exceed 50 cents per dozen. The goods were accordingly returned by the appraiser. as pocketknives valued at more than 50 cents per dozen, including the proportionate value of the cartons and cases, which was distributed pro rata as part of the market value of the merchandise. The board held:

In making appraisements under this section, the value of the cases or other coverings is as much a part of the market value of the imported merchandise as the *per se* value itself of such merchandise. And this is so for all tariff purposes involving the assessment of duties, except when a different rule is specially provided in particular instances.

These cases were cited with approval and the rule of the cases followed by this court in United States *v.* Francklyn, *supra.* Note opinion of Judge Somerville (T. D. 32378).

So that it has been determined by this court that in the performance of the duty imposed upon the appraiser under subsection 10 to appraise the market value or wholesale price of merchandise at the time of exportation to the United States in the principal markets of the country whence the same has been imported, and the number of yards, parcels, or quantity, the appraiser is required to include the value of cartons, cases, etc., as part of the market value.

I think the decision in this case should be *affirmed*