GOUSSIOS & CO. *et al. v.* UNITED STATES (No. 682).[1]

1. AN ADMINISTRATIVE FOLLOWED BY A STATUTORY CONSTRUCTION.
    It is true a more specific designation controls as against a general designation, that a designation *eo nomine* controls as against a description by class, but where there has been an administrative construction and this has been adopted into law this construction must control.—Brennan *v.* United States (136 Fed. Rep., 743).

2. OLIVES BARRELED IN BRINE.
    To hold this importation to be "fruit in brine" and free of duty as such would be to hold all olives are duty free. The construction given in the administration of the law and the apparent adoption of this construction by subsequent congressional enactment makes black or ripe olives in brine dutiable under paragraph 275, tariff act of 1909.—Causse Mfg. Co. *v.* United States, G. A. 5417 (T. D. 24663), distinguished.

3. ALLOWANCE FOR BRINE, WHEN NOT MADE.
    The actual quantity of olives in the importation was, it would seem, ascertained by the gauger and no allowance should accordingly be made for brine.

United States Court of Customs Appeals, November 22, 1911.

APPEAL from Board of United States General Appraisers, Abstract 25647 (T. D. 31624).
    [Affirmed.]
    *Hatch & Clute (Edward S. Hatch* and *Walter F. Welch* of counsel) for appellants.
    *Wm. L. Wemple,* Assistant Attorney General (*Leland N. Wood* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:
    The importations involved in this case are of black or ripe olives, imported from Greece in barrels. Duty was assessed on the fruit at

---

[1] Reported in T. D. 32051 (21 Treas. Dec., 607).

the rate of 15 cents per gallon under paragraph 275 of the tariff act of 1909. The importers claim free entry under paragraph 571, which provides for "fruits or berries, green, ripe, or dried, and fruits in brine, not specially provided for in this section."

Paragraph 275 reads as follows:

275. Figs, two and one-half cents per pound; plums, prunes, and prunelles, two cents per pound; raisins and other dried grapes, two and one-half cents per pound; dates, one cent per pound; currants, Zante or other, two cents per pound; olives, in bottles, jars, kegs, tins, or other packages, containing less than five gallons each, twenty-five cents per gallon; otherwise, fifteen cents per gallon.

The provision for olives *eo nomine* in this paragraph is very broad, but standing by itself would most clearly cover the importations in question.

It is said by importer's counsel that under the tariff act of 1897 it was held that olives in brine were free of duty as fruits in brine, citing United States *v.* Zucca & Co. (175 Fed. Rep., 578). This is not, however, an accurate statement of the holding in that case. What was held in that case was that under the act of 1897, which provides for olives, green or prepared, in casks, 15 cents per gallon, ripe olives did not come within this designation; that they were not green olives; and that they were not prepared in the sense in which that term was used in the act. After fully discussing the testimony, the court said:

I know of no case where the courts have held that the application of salt and water alone constitutes a preparation, nor do I believe that such was the intent of Congress in using that language.

And it was further said by the court:

As the new tariff law of 1909 puts all olives on the same footing, it is unnecessary to further discuss the question, as any decision now made in the case at bar can only affect pending cases.

This case points clearly the distinction between the law of 1897 and that of 1909, and were the decision to be rested upon this case alone the Government's contention that by a change in the phraseology of the section relating to olives by the use of unrestricted language covering olives in bottles, jars, kegs, tins, or other packages, and eliminating the words "green or prepared," it would so broaden the provision of the earlier act as to include ripe olives, would be beyond question.

It appears by an examination of the decisions of the Board of General Appraisers cited in the brief of counsel that while the question appears not to have been much discussed, green olives and prepared olives were treated as dutiable under section 264 of the act of 1897 during its entire history.

The distinction between green and ripe olives was first made by a court decision in United States *v.* Zucca, *supra*, after the act of 1909

took effect. This case, however, was in affirmance of a decision by the Board of General Appraisers in 1906 and reported in G. A. 6505 (T. D. 27793), and the inference is very strong that the change in the law was made for the purpose of doing away with that distinction which the Board of General Appraisers had recognized.

To justify a holding under the present law that these olives are entitled to entry as fruit in brine we must conclude that the purpose was to admit all olives free, for no one can seriously contend that there is now any distinction between green olives and ripe olives, both the subject of importation.

But the contention of appellant's counsel is broadly that the terms of the free list above quoted for fruits in brine should be taken as more specific than the provisions for olives in paragraph 275, and cites, to sustain this contention, the case of A. L. Causse Manufacturing Co. *v.* United States, G. A. 5417 (T. D. 24663), which case involved a provision for fruits in brine in contest with cherries, green or ripe, under paragraph 262 of the act of 1897, the material part of which was deemed by the board to be—

Apples, peaches, quinces, cherries, plums, and pears, green or ripe, 25 cents per bushel; apples, peaches, pears, and other edible fruits, including berries, when dried, desiccated, evaporated or prepared in any manner, not specially provided for in this act, 2 cents per pound. * * *

The board, in construing this section 262, said:

In our judgment the terms "green or ripe," in paragraph 262, as was said by the Circuit Court in construing similar words in paragraph 580 of the act of 1890, refer to "fruits brought here in the state in which they are picked without being subjected to any preserving process." Johnson *v.* United States (66 Fed. Rep., 725). The imposition of a duty of 25 cents "per bushel" suggests an intent to include in paragraph 262 only fruit as picked from the tree. They would not fall within the second subdivision of the paragraph as fruits "prepared in any manner." This expression has been held under the application of the doctrine of *noscitur a sociis* to embrace only fruits preserved by drying processes. Citing *In re* Curtis, G. A. 5205 (T. D. 23987); *In re* Loggie, G. A. 4782 (T. D. 22545).

The board further said:

Not being specially provided for in paragraph 262 or elsewhere, they come within the enumeration of "fruits in brine, not specially provided for," in paragraph 559 of the free list as claimed.

This case can hardly be deemed an authority, for it was determined upon the case there considered that the importation was not specially provided for in section 262. It can not be truthfully said that olives are not specially provided for in the paragraph here under consideration.

Counsel next cites the case of Brennan *v.* United States (136 Fed. Rep., 743). This case was very carefully considered, and a very able opinion given by Putnam, C. J. This also involved paragraph 266 of the act of 1897, covering "oranges, lemons, limes, grapefruit, shaddocks, or pomelos, 1 cent per pound," in contest with fruits in brine,

the importation consisting of limes in brine. It was found by the uncontradicted evidence that the expressions "limes in brine" and "pickled limes" are in mercantile uses synonymous and interchangeable, and that there has always been a trade distinction between limes and limes in brine to the extent that if one asked a merchant for limes he would be given fresh limes. The court then discusses the rule invoked by counsel for Government that an *eo nomine* provision should generally be given controlling effect as against a general provision and the construction urged by the importer, and said:

Therefore it is that sometimes the ordinary rule that articles are not dutiable under general terms when a duty is imposed in specific language leaves it to be determined what is specific language, and whether it is that which contains a designation *eo nomine* or that which describes a class. Evidently language referring to the latter may be, under some circumstances, the more specific, and such apparently is the case at bar.

And then proceeds to say that—

Notwithstanding the great weight given in customs cases to the two rules of interpretation, which, as we have said, are relied on on the one side by the United States and on the other by the importer, there is another rule which masters them both.

The court then proceeds to point out that a distinction had been made in previous tariff acts covering a period of many years which limited the terms "oranges, lemons, and limes" as used in the context to fresh fruit, and that limes in brine were not to be classified under limes *eo nomine* and that as Congress had reenacted the various expressions involved without discrediting the Treasury interpretation thereof, it amounted in its several aspects to a statutory construction to the effect that the word "limes" does not include limes in brine, and concluded by saying:

This statutory construction is of the highest authority and masters all the other rules.

Unfortunately for the contention of the importer, if the same master rule be applied in construing the present statute, it is evident that it makes against the contention presented, as under the prior act of 1897, during its entire history, it would appear that olives answering to the description contained in paragraph 264 were assessed at the rate there fixed, although they were imported in brine.

It is also contended by the appellant that an allowance should be made for the brine in which the olives were shipped. There were numerous shipments involved in this case, one from Calamata and the others from other parts of Greece. The board found that the testimony on the part of the Government conclusively established that in all shipments of olives except those from Calamata the fruit is in a solid, compact condition, not increased in any way by the presence of brine; that a deduction should not be made for brine unless it were made to appear that the presence of the brine increased

the volume of the commodity, and that if you have a given gallon of dry olives a certain amount of liquid could be poured into the measure without increasing the volume of the fruit. The testimony in the case shows that all the olives were gauged for the purpose of ascertaining the gauge of the olives alone, and the gauger testified that the quantity of olives is always apparent to the gauger. The wantage in these various importations varied from 5 to 15 or 20 per cent.

The protest does not show that amount of brine was present in the Calamata olives, nor does the testimony establish satisfactorily that the gauger did not in this case, as in that of the other importations, ascertain with reasonable certainty the actual quantity of olives. The method employed seems to have been the usual one.

The decision is *affirmed*.