UNITED STATES v. FRANCKLYN (No. 902).[1]

SECTION 88 AND SUBSECTION 18 OF SECTION 28, TARIFF ACT OF 1909.
On a review of the decisions and after allowing due weight to the fact that there has been a legislative adoption of a long-continuing customs practice, it is held that, according to subsection 18 of section 28, tariff act of 1909, the value of dutiable coverings should be added in determining the proper dividend to be used for ascertaining the rate of duty. The value of the coverings should be added to the value *per se* of the cement; but in the absence of express provision, may not be considered in determining the weight of the merchandise.

United States Court of Customs Appeals, March 21, 1913.

APPEAL from Board of United States General Appraisers, G. A. 7346 (T. D. 32378).
[Reversed.]

*William L. Wemple*, Assistant Attorney General (*Frank L. Lawrence*, special attorney, on the brief), for the United States.
*Walden & Webster* (*Henry J. Webster* of counsel) for appellant.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:
The importation covered by the protest in this case consists of Keene's cement in barrels. It was assessed under paragraph 88 of

---

[1] Reported in T. D. 33306 (24 Treas. Dec., 486).

the tariff act of 1909 at $10 per ton, the applicable provisions of which are as follows:

\* \* \* Cement of which gypsum is the component material of chief value, if valued at ten dollars per ton or less, three dollars and fifty cents per ton; if valued above ten dollars and not above fifteen dollars per ton, five dollars per ton; if valued above fifteen dollars and not above thirty dollars per ton, ten dollars per ton; \* \* \*.

The claim of the importer as stated in his protest is that the merchandise is dutiable at $5 per ton, on the ground that the same is of the value of less than $15 per ton and above $10. This claim is based on the contention that in determining the value of the cement as ascertained for the purpose of fixing the rate of duty, the value of the containers or barrels should be excluded, or if the value of the containers is included in the value of the cement, that the gross weight of the cement, including the barrels, should be taken in order to determine the value of the cement per ton. The collector in each case assessed the duty upon the net weight of the goods, which the weigher reported to be the same as the invoice weight, namely, 6¼ tons.

The invoice and entered value was the same, and, less 2½ per cent discount allowed, the total value was £20 2s. 2d. The value of 1 net ton equals $97.86, which, divided by 6¼ tons, would make the value $15.66 per ton.

The question presented is whether, construing section 88 and subsection 18 of section 28 of the tariff act together, the value of the coverings and other charges should be added to the *per se* value of the merchandise to constitute a dividend, which should be divided by the quantum of the importation to ascertain the rate to be charged under paragraph 88.

On the first consideration of this case, we reached the conclusion that the rate of duty should be ascertained without adding to the value of the importation the value of the coverings, holding that when the rate was ascertained this was to be spread upon not only the cement, but also its value as increased by the value of the coverings and other charges.

A rehearing has been granted in the case, and this question has been discussed at much greater length and with much fuller citation of authorities, and while still adhering to the view that, were this question one of first impression, there is great force in the view contended for by the importer here and first adopted by this court, we feel constrained to depart from our former holding, and upon the ground of legislative adoption of a long-continued customs practice and of decisions of the Board of General Appraisers, hold that the contention of the Government should prevail.

As affecting the question here involved, subsection 18 of section 28 of the present tariff act is not to be distinguished from section 19 of the customs administrative act of 1890.

The provisions of subsection 18 are:

That whenever imported merchandise is subject to an ad valorem rate of duty, or to a duty based upon or regulated in any manner by the value thereof, the duty shall be assessed upon the actual market value or wholesale price thereof, at the time of exportation to the United States, in the principal markets of the country from whence exported; that such actual market value shall be held to be the price at which such merchandise is freely offered for sale to all purchasers in said markets, in the usual wholesale quantities, and the price which the manufacturer or owner would have received, and was willing to receive, for such merchandise when sold in the ordinary course of trade in the usual wholesale quantities, including the value of all cartons, cases, crates, boxes, sacks, casks, barrels, hogsheads, bottles, jars, demijohns, carboys, and other containers or coverings, whether holding liquids or solids, and all other costs, charges and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States,   *   *   *.

Said section concludes as follows:

That the words "value" or "actual market value," or "wholesale price," whenever used in this Act, or in any law relating to the appraisement of imported merchandise, shall be construed to be the actual market value or wholesale price of such, or similar merchandise comparable in value therewith, as defined in this Act.

We are now convinced that sufficient weight was not given in our former opinion to the concluding portion of this section, as quoted. Under the act of 1890 the question first arose in *In re* Miller (T. D. 13512). In that case certain steel was imported which under the provisions of section 146 of the tariff act of 1890. if valued above 3 cents and not above 4 cents per pound was dutiable at 1.6 cents per pound. The price paid for this steel was less than 3 cents per pound. The cost of the barrels and packing charges added to the value of the steel made the cost more than 3 cents per pound. The point urged before the board was that the barrels in which the steel was entered were entitled to free entry, and it was held that it was not material to inquire whether the barrels would have been entitled to free entry if imported empty. But upon the authority of section 19 of the act of June 10, 1890, it was held that the collector committed no error in adding the invoice value of the barrels, together with the cost and expenses of placing the merchandise in condition packed ready for shipment to the United States, to the value of the steel in the ascertainment of its dutiable value.

It may be said of this case that the point now in controversy was not urged. But it affords a precedent for later decisions. It has, it is true, later been determined that it *is* a material question in certain cases as to whether the coverings are dutiable. See T. D. 22462. But the rule that the value of *dutiable* coverings is to be added to make up the dividend to be used in ascertaining the rate has not been departed from.

In the matter of Newman & Co. (T. D. 14929), the question was distinctly presented. In that case cloths were dutiable according to their value by the square yard. The board said:

That the appraised value, to wit, the market value of said cloths per square yard, ascertained as provided in section 19 of the act of June 10, 1890, exceeds 15 cents; that in this value is included the value of the cases, which cases are of American manufacture returned. * * * In determining the value of the merchandise subject to an ad valorem duty, section 19 aforesaid requires the appraiser to include the amount of all costs and charges as therein specified.

In the matter of the Supplee Hardware Co. (T. D. 16806), there was under consideration paragraph 138 of the act of 1894, which provided a duty on—

Penknives and pocketknives * * * of all kinds * * * valued at more than thirty cents per dozen and not exceeding fifty cents per dozen, twelve cents per dozen; valued at more than fifty cents per dozen and not exceeding one dollar per dozen, twenty-five cents per dozen. * * *

The merchandise covered by the protest consisted of pocketknives which were appraised and invoiced at 49.028 cents per dozen, plus the value of the cases, which, being proportionately distributed, made the cost and appraised value of the knives to exceed 50 cents per dozen. The goods were accordingly returned by the appraiser as pocketknives valued at more than 50 cents per dozen, including the proportional value of the cartons or cases, which was distributed pro rata as a part of the market value of the merchandise. The board held that—

In making appraisements under this section, the value of the cases or other coverings is as much a part of the market value of the imported merchandise as the *per se* value itself of such merchandise. And this is so for all tariff purposes involving the assessment of duties, except when a different rule is specially provided in particular instances.

And in 1898 the question was considered by the Treasury Department under paragraph 368 of the tariff act of 1897, which provides an ad valorem rate of duty on women's and children's dress goods, coat linings, etc., based on the price per square yard and the price per pound, whether, for the purpose of ascertaining the value of said goods per pound, the cost of putting up, cases, etc., should be included. Referring to section 19, it was said:

Said section 19 applies, therefore, directly to the case cited by you, and I have to inform you that it is the practice to take into consideration all costs of putting up, cases, etc., in ascertaining the foreign market value of women's and children's dress goods, coat linings, etc., enumerated in paragraph 368 of the tariff act of July 24, 1897.

In harmony with these holdings is *In re* Carbery (T. D. 22469).

No court decision directly in point is cited; but in Rice *v.* United States (123 Fed., 195) the correctness of the Government's present

contention was assumed, and Saxonville Mills v. Russell (116 U. S., 13) would seem to be in point in principle.

In view of this long-continued construction of provisions not differing materially from those in subsection 18, we feel constrained to hold that by the adoption of this subsection Congress has affirmed the doctrine laid down in these holdings, and that we are not justified in departing from it.

The opinion of the board was in accord with the foregoing, but the collector's action was reversed by the board on grounds not stated in the opinion, presumably on the ground that the proper divisor to be used in ascertaining the rate would be the weight of the cement with the coverings added. We think this was not permissible. The coverings were not *dutiable* by weight, as is provided in certain paragraphs of the act, notably paragraphs 86, 87, 219, 248, 251, and 292. Under section 2898, Revised Statutes, the weight of coverings is allowed as tare. Under subsection 18, the *value* of the coverings is added to the *per se* value of the cement, and enhances the value of the cement itself, and is, in the absence of express provision, not to be considered in determining the weight. It stands for this purpose on the same footing as the "other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States."

The decision of the Board of General Appraisers is reversed and the action of the collector *affirmed*.