(C. D. 706)

Scaramelli & Co., Inc. *v.* United States

United States Customs Court, Third Division

(Decided November 12, 1942)

*Strauss & Hedges* (*Eugene F. Blauvelt* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Joseph F. Donohue*, special attorney),. for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

KEEFE, Judge: This case involves the dutiable weight of eight shipments of cheese consisting of Pecorino Romano Sardo, Romano, Riggiano, Provolone, and Sbrinz. The Pecorino Romano Sardo and Provolone cheese were assessed for duty at 35 per centum ad valorem under paragraph 710 of the Tariff Act of 1930 and the remainder at 7 cents per pound under the same paragraph. The plaintiff claims. that inasmuch as the various kinds of cheese were surrounded with an. inedible substance, not cheese, an allowance in weight therefor should' have been made by the collector in his assessment of duty.

At the trial counsel for the plaintiff called Examiner Cryan who· testified that the Sbrinz cheese, Romano cheese, Romano Sardo cheese, Riggiano cheese and Provolone cheese are all of the same types as· previous importations under the same names that have been the· subject of decision by this court, and counsel for both parties entered into the following oral stipulations.

Mr. BLAUVELT. Counsel stipulate that the cheese described on the invoice now before the court as Romano cheese, whether or not it came from the Argentine· or whether or not it came from Italy, and whether or not it is accompanied by modifying words or phrases, contained an inedible covering composed of extra-· neous material to the extent of 2½ per cent of the landed net weight of the cheese.

Mr. DONOHUE. That is agreed to. [Record pp. 5 and 6.]

Mr. BLAUVELT. And counsel also stipulate as to the cheese described on these· invoices as Reggiano, whether or not it comes from the Argentine or from Italy and whether or not the term Reggiano is accompanied by modifying words or· phrases, contains a covering of inedible material and extraneous material consist-· ing of 1 percent of the landed net weight of the cheese.

Mr. DONOHUE. That is agreed to. [Record p. 6.]

Mr. BLAUVELT. As to the cheese identified by the examiner as Sbrinz cheese· and so described on the invoices before the court, counsel stipulate that the cheese· involved in these importations is the same in all material respects, including the· covering, as the cheese in *Scaramelli & Co., Inc.* v. *United States*, Protest 829010, and decided in Abstract 42146; and I move to incorporate the record in the cited case with the record in the case at bar.

Mr. DONOHUE. I agee to the stipulation, and have no objection to the incor-· poration of the record.

Judge KEEFE. It may be incorporated.

Mr. BLAUVELT. If the court please, I inadvertently left out the Government's· side of this stipulation; I am sorry.

And counsel also agree that the Sbrinz cheese examined by the Government,. which will be the subject of testimony in this trial today is the same in all respects: as the cheese at bar.

Mr. DONOHUE. That is agreed to. [Record pp. 6 and 7.]

Mr. BLAUVELT. Counsel further stipulate that the Provolone cheese described' as such on the invoices before the court this morning is the same in all material

respects, including covering, as the cheese in the case of *Scaramelli & Co.* vs. *the United States*, decided in Abstract 40880, and that the Provolone cheese examined by the Government, which will be the subject of testimony in the trial today, is the same as the cheese in the case at bar.

Mr. DONOHUE. That stipulation is agreed to.

Mr. BLAUVELT. And I move to incorporate the record in Abstract 40880 in the record in this case.

Mr. DONOHUE. I have no objection to the incorporation of the record.

Judge KEEFE. So ordered. [Record page 7.]

The incorporated case of *Scaramelli* v. *United States*, Abstract 42146, involved certain Sbrinz cheese from Argentina. The evidence in that case established that the inedible covering comprised 2½ per centum of the weight of the cheese and the court there held that such inedible covering was tare and that an allowance in weight of 2½ per centum should have been made from the net weight of the cheese.

The incorporated case of *Scaramelli* v. *United States*, Abstract 40880, involved certain Provolone cheese. It was there stipulated that such cheese contained a coating of paraffin and was encircled with twine for convenience in handling and that neither the paraffin nor the twine was edible. It was further agreed that the combined weight of the paraffin and string amounted to 3⅓ per centum of the gross weight of the cheese. Upon the evidence presented it was there held that the inedible coverings including the strings, weighing 3⅓ per centum of the gross weight of each individual cheese, were properly deductible as tare.

It may be noted in the case before us that the strings were removed and are not at issue. The same facts existed in the case of *Scaramelli* v. *United States*, Abstract 41794, where it was held that Provolone cheese, after the removal of the twine, contained an inedible coating weighing 2½ per centum of the net weight of the cheese, and that such inedible portion of the cheese was properly deductible as tare.

After the stipulation and the introduction of the records in the incorporated cases the plaintiff rested. The Government here now contends that the allowance in weight previously granted by the court in the incorporated cases included certain percentages of cheese destroyed in the removal of the coverings and that such portions of cheese should not have been included in allowances for inedible coverings.

In support of the Government's position testimony was adduced relative to a series of additional tests taken upon Provolone and Sbrinz cheese from various shipments, although such cheese was not a part of the merchandise here in question. In such tests the examiner had supervised the scraping of the imported cheese, preserved the scrapings together with a "plug" sample of the particular cheese and determined the percentage of scrapings in relation to the weight of the whole cheese from the difference in weight of the loaf of cheese

as imported and the weight thereof after scraping. These samples were forwarded to the customs laboratory where Government chemists, by means of a well-known chemical process, determined the quantity of nitrogen in the cheese protein as contained in the "plug" sample as well as in the scrapings. From such findings the ratio of cheese present in the scrapings was determined by dividing the nitrogen in the scrapings by the nitrogen in the cheese and dividing the result by one hundred. Seven tests of Provolone cheese were made and the findings recorded by the chemists. Such findings were admitted in evidence as exhibit 1. Such exhibit also contains the notations of the examiner as to the percentage of weight of the various inedible coverings, to wit, 7.111, 3.183, 2.772, 2.053, 0.995, 3.919, and 2.456 per centum. The percentages of cheese in the inedible coverings corresponding to the foregoing percentages of scrapings are recorded as follows: 83, 90, 85.4, 70, 17.3, 74.4, and 73.3 per centum, and the percentages of the corresponding inedible coverings, after elimination of the cheese therefrom, are shown to be the following: 1.207, 0.318, 0.404, 0.616, 0.79, 1.003, and 0.655 per centum. In the first two tests resulting in the foregoing quantities, the precentage of paraffin was determined by separating the paraffin and weighing the same. In making the chemical tests of the remaining samples the water content of cheese was not taken into consideration except in the one where the finding was 0.79 per centum. There the difference between the moisture in the "plug" sample and the scrapings was approximately 40 per centum. The percentage of nitrogen in the scrapings was figured by reducing the moisture content of the cheese "plug" to a dry basis. However the moisture content of the scrapings was disregarded. The chemist who by tests arrived at the percentage of 1.003 per centum found 35¼ per centum of moisture in the cheese "plug" and 20.8 per centum in the scrapings but disregarded such differences in arriving at the quantity of inedible coverings.

Tests were conducted upon five loaves of Sbrinz cheese and the results recorded by the examiner and the chemists are shown in exhibit 2. The examiner found the percentages of weight of the inedible covering to be 2.709, 1.154, 1.943, 1.47, and 1.462 per centum. The percentages of cheese in the inedible coverings corresponding to the foregoing quantities of scrapings, as found by the chemist, were 75.8, 41.7, 45.5, 47.9, and 42.9 per centum, and after the elimination of the cheese therefrom, the inedible coverings were reported as the following portions of the net weight of the cheese, to wit: 0.655, 0.672, 1.059, 0.765, and 0.833 per centum. The moisture content of the cheese "plug" and the scrapings was disregarded in arriving at the foregoing percentages of inedible material and it was admitted that in not considering the moisture content the percentage of cheese

would be higher in the scrapings, resulting in less inedible material being reported than actually contained in such scrapings.

At the close of the Government's evidence Doctor Seil, a consulting chemist, testified relative to chemical tests made upon the Provolone cheese, exhibit 5, and Sbrinz cheese, exhibit 6. This witness testified that cheese contains 16 per centum nitrogen and from such known factor the cheese content may be obtained. However, he was of the opinion that a finding of the nitrogen content was not synonymous with a finding of the cheese content. The witness, by example of his findings in the Provolone cheese, demonstrated that the cheese content was lower than the nitrogen content. In his tests he found 2.98 per centum of nitrogen in the scrapings and 6.27 per centum nitrogen in the cheese, the scrapings having been found to consist of 5.89 per centum of the total weight of the cheese. With these findings before him, he divided 2.98 by 6.27 and multiplied by 5.89, arriving at 2.80 as the percentage of weight of cheese in the scrapings. As the entire scrapings weighed 5.89 per centum of the total weight of the cheese, the percentage of weight of the inedible material therein was the difference between 2.80 and 5.89, or 3.09 equalling the percentage of weight of the inedible coverings. It was admitted by the witness, however, that in determining the amount of inedible material upon Provolone cheese he failed to determine the moisture content of the scrapings. Apparently he did not proceed upon the "dry" basis.

In testing the Sbrinz cheese this witness found that the scrapings contained material other than cheese weighing 4.6 per centum of the weight of the whole cheese, and that such scrapings were 11 per centum foreign matter and 89 per centum cheese, and that 0.65 per centum of the total weight of the cheese was foreign matter. The witness also found that there was a difference of more than 24 per centum between the moisture in the cheese and in the scrapings, having found 30.6 per centum moisture in the cheese and 5.99 per centum in the scrapings. In making his determination of the percentage of inedible material, the witness calculated back the moisture upon the basis of the moisture in the original cheese, that is, he took 30 per centum rather than 6 per centum in restoring the cheese in the scrapings to their original condition. The witness used the 30 per centum rather than the 6 per centum upon the assumption that originally the rind of the cheese contained 30 per centum moisture, although admitting that such a calculation would result in a lower percentage of inedible matter than actually contained in the scrapings and a higher percentage of cheese.

The evidence reveals that the scrapings obtained from various loaves of Provolone cheese by the examiner varied from 0.995 per centum to 7.111 per centum of the total weight of the cheese and the scrapings from Sbrinz cheese varied from 1.154 per centum to 2.709

per centum. Although the examiner superintending the scraping of the cheese was of the opinion that every part of inedible material possible had been removed from the various samples, he was unable to account for the variation in the percentages of weight. The samples used in the tests were not before the court. The importer's witness had used a quarter of a Provolone cheese for testing for the percentag of inedible substance thereon, and about a seventh of a Sbrinz cheese, obtaining 5.89 per centum of scrapings and 3.09 per centum of inedible material upon the Provolone cheese and 4.6 per centum of scrapings and 0.65 per centum of inedible material on the Sbrinz cheese. In spite of the variance in the findings, the witnesses agreed that the inedible material upon the types of cheese in question was uniform.

In view of the fact that the percentage of inedible material arrived at in the incorporated cases was the result of tests made by both parties and for the additional reason that the cheese the subject of, these tests was not actually a part of the shipments in this case we do not believe such tests are of sufficient accuracy to warrant a modification of previous adjudications as to the percentage of inedible coverings.

We are also of the opinion that the chemical separation of the particles of cheese in the scrapings as performed by the various witnesses was not conducive of accurate results. The tests so performed lead us to the conclusion that the separation of the cheese in the scrapings is impracticable and not capable of reasonable ascertainment. The minute quantity of cheese appearing in the scrapings, which necessarily is removed with the cheese prior to consumption, is admittedly worthless as cheese. It would therefore seem to have the same status as the sugar adhering to sugar bags before the court in *In re McCahan Sugar Refining Co.*, G. A. 7883, T. D. 36306. In that case the Government had resorted to an elaborate process in order to eliminate all of the sugar adhering to the bags by steaming and drying and the court held such process was beyond the scope of the law.

Counsel for the Government further contends that in the event the court reaches the conclusion that the inedible material upon the cheese subject to tare allowance was properly determined in the previous cases incorporated herein, the importer is not entitled to a refund where duty has been assessed on an ad valorem basis, inasmuch as the inedible material is a covering and is controlled by the statutory provisions relating to coverings and containers of imported merchandise.

In that connection the Government points out that the cheese was appraised upon the basis of the foreign value as defined in section 402 (c), providing that such value shall be the market value or price of such merchandise in the country of exportation "including the cost of all containers and coverings of whatever nature." Counsel therefore argues that in determining the net weight of the cheese for dutiable

purposes, the collector should have deducted the weight of the covering, because it was not cheese, then the cost of that covering should have been added as an item of packing under section 402 (c). Therefore, *if the unit cost of the covering is the same as the unit value of the cheese,* the Government contends that the importer would gain nothing by protesting, because, if the collector deducts the weight of the covering from the total weight, for the purpose of assessing duty thereon, he would add to the dutiable value the cost of the covering. Counsel illustrates Government's contention as follows:

Assuming that a shipment of Romano cheese, as imported, weighed 1,000 lbs. and was appraised at 30 cents per pound. If the collector assessed duty on the total net weight, making no allowance for covering, the dutiable value would be the unit value (30 cents per pound) multiplied by the total weight (1,000 lbs.), or $300. A duty of 35 per centum assessed thereon would equal $105. Assuming that an inedible covering, representing 2½% of the total weight, or 25 lbs., was deducted the dutiable value would then be 975 lbs., times 30 cents, or $292.50. To this would be added the cost of the inedible covering. If this cost were the same as the value of the cheese, it would total $7.50. This would be added as a dutiable item, and again a duty of 35 per centum would be assessed on $300.

So, whatever may be said of the legal merits of the importer's protest, it presents a claim which, even if sustained, would result in no refund. In brief, the attack is on the procedure followed in computing the duty, but the proof does not support the allegations that an *excessive* duty was imposed.

Counsel in the foregoing argument and illustration proceeds on the premise that the covering, being a part of the commercial entity—the loaf of cheese—is of the same value per pound for all commercial purposes as any other part of the loaf. Counsel claims that such value is not disputed and it was admitted in the previous cases before the court that cheese is sold by weight and the inedible covering is included in such weight.

The position taken by the Government is untenable and at variance with the decisions of the courts. Under various former tariff acts the Secretary of the Treasury has attempted to put such a practice into effect and invariably the courts have decided that such was illegal in the absence of specific direction of Congress.

In the case of *Wilson* v. *Maxwell*, 30 Fed. cases 147, the court stated:

* * * it lies with congress to prescribe the rules by which the quantity or value of merchandize imported shall be ascertained. Accordingly, it rests in its discretion to fix the particulars to be regarded in determining the quantity by weight of goods imported in boxes, casks, bags or other packages, and to exclude or include the boxes, etc., in the computation. If no regulation in that respect is adopted, the true principle is to consider the merchandize alone as subject to duty.

This principle may be clarified by the decision of the court in *Volkman* v. *United States*, 99 Fed. 264 (affirmed by the Circuit Court of Appeals in 107 Fed. 109). There the merchandise involved was chocolate, dutiable under paragraph 281 of the act of 1897. The paragraph reads in part as follows:

281. Chocolate and cocoa  *  *  *  valued at not over fifteen cents per pound, two and one-half cents per pound; valued above fifteen and not above twenty-four cents per pound, two and one half cents per pound and ten per centum ad valorem; *  *  *. The weight and value of all coverings, other than plain wooden, shall be included in the dutiable weight and value of the foregoing merchandise; *  *  *.

## The court stated:

The dutiable value per pound of this importation has been arrived at by adding the value of the tin boxes to that of the chocolate, and dividing the sum by the number of pounds of the chocolate alone, against a protest that the division should be by the number of pounds of both the chocolate and the tin coverings.  The method adopted included the value and excluded the weight of the coverings from the computation.  This brought the dutiable value above 24 cents per pound, and, with the weight of the coverings included, it would have been below, and the duty 2½ cents per pound less.  The requirement is express that the weight, as well as the value, of the coverings "shall be included," and it was not.

Here we have a different situation.  Paragraph 710 of the Tariff Act of 1930 provides for cheese in language following:

PAR. 710. Cheese and substitutes therefor, 7 cents per pound, but not less than 35 per centum ad valorem.

There is nothing contained in the foregoing language to indicate that Congress intended that duty shall be levied upon anything other than cheese, or that the dutiable value should be arrived at by any other means than a multiplication of each unit of cheese by the value of such unit.  The value of the coverings if not included should be added to the *per se* value of the merchandise, but in the absence of express provision the weight thereof may not be considered in determining the weight of the merchandise.  The courts have not departed from this rule.

In the case of *United States* v. *Francklyn*, 4 Ct. Cust. Appls. 54, T. D. 33306, certain cement, imported in barrels, was assessed for duty at $10 per ton under paragraph 88 of the act of 1909, providing that if such cement was valued above $10 per ton and not above $15 per ton, it was dutiable at $5 per ton, but if valued above $15 per ton and not over $30 per ton, it was dutiable at $10 per ton.  In arriving at the duty the collector divided the net weight of 6¼ tons into the *per se* value of the cement plus the cost of the containers, and ascertained that the value per ton was $15.66, and upon that basis assessed duty at the higher rate.  The importer claimed that the cement was dutiable at $5 per ton because in fixing the value of the cement, the value of the containers or barrels should be excluded, or if included, the gross weight of the cement, including the barrels, should be taken as the divisor to determine the unit value per ton.  The board sustained the protest on the ground that the proper divisor to be used in ascertaining the rate would be the weight of the cement

with the coverings added. In reversing the board our appellate court, stated:

We think this was not permissible. The coverings were not *dutiable* by weight. * * *. Under section 2898, Revised Statutes, the weight of coverings is allowed as tare. Under subsection 18, the *value* of the coverings is added to the *per se* value of the cement, and enhances the value of the cement itself, and is, in the absence of express provision, not to be considered in determining the weight. It stands for this purpose on the same footing as the "other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States."

In *United States* v. *Ringk*, 4 Ct. Cust. Appls. 349, T. D. 33530, the court stated:

The underlying principle of *Karthaus* v. *Frick* [14 Fed. Cases, 136, No. 7615,] and all the cases we have been able to read upon the subject is to avoid double taxation. For that reason the learned Chief Justice Taney, in *Karthaus* v. *Frick*, held that if the containers or packing charges of specific-rate goods were either manifestly included by Congress in the rate of duty assessed upon the contents, or it was made to appear that Congress in affixing that rate intended the rate to cover as an entirety the coverings, charges, and contents, then under that finding the levying and collection of that rate of duty upon the basis fixed by the statute was all that could be collected upon such merchandise. Obviously the assessment of the coverings or charges, and in addition including them in the dutiable value of the contents as aforesaid, would be doubly assessing them for dutiable purposes.

So the reasoning of all the decisions wherein it is held that coverings or charges plainly included within subsection 18 and its statutory predecessors can not be included also for dutiable purposes in the dutiable provisions of the tariff laws is upon the grounds of an avoidance of double taxation.

In *United States* v. *Vandegrift & Co.*, 4 Ct. Cust. Appls. 355, T. D. 33531, certain imitation silk subject to an ad valorem rate of duty was imported upon wooden spools. The collector assessed the spools at an ad valorem rate of duty as manufactures of wood. The importer claimed the spools dutiable as containers, or as costs, charges, and expenses attending the preparation for shipment of the imitation silk. The record disclosed that there was not a continued use of the spools after the removal of the imitation silk and that they were destroyed as useless, although they necessarily entered into the cost and value of the contents as appraised and assessed for duty. The question arising there was whether said spools were dutiable as part of the merchandise which they accompanied, or separately dutiable under one of the dutiable provisions of the tariff law. The court found that the spools were included within the price of the article as purchased and imported and under the doctrine of *Karthaus* v. *Frick, supra*, were not to be assessed for duty under any of the dutiable provisions of the tariff law. The court stated:

Being included within the cost and market value of the goods themselves, and therefore by reason of that fact being assessed once for duty as a part of the

contents, they can not again be rated for duty as a separate entity under the fundamental rule inhibiting double taxation.

In *United States* v. *Suzarte & Whitney et al.*, 8 Ct. Cust. Appls. 99, T. D. 37219, certain crude balsam of copaiba was imported in 135 cases each containing 2 tins of the balsam. The outer coverings were plain wood coverings. The tins were second-hand Standard Oil cans. The goods were returned by the weigher at 12,720 gross weight, and 1,665 pounds as tare for outer wooden cases. The weigher reported that it was impracticable to determine the weight of the tins. In liquidating the entry the collector multiplied the appraised unit of value of the merchandise by the gross weight of the tins and the contents rather than by the *per se* net weight. At the trial before the board it was established that the weight of the tins was 809 pounds. The board held that the net weight and not the gross weight of tins and contents should form the basis of the assessment for duty. However, it was also held that there should be added to the amount thus ascertained the value of the coverings, that is, the tins and the wood cases. Both the importer and the Government appealed. The importer contended that the court erred in directing the value of the tins and outside packing to be added to that of the *per se* merchandise. The Government contended that the statement of the unit value by the appraiser should be construed as the value of the entire importation by the pound, including the weight of the coverings. Our appellate court stated that in fixing the value of balsam of copaiba by the pound unit, it is not to be inferred that it was intended by the appraiser to affix a like value to the containers, which of course would not ordinarily be subjected to any such rate of duty. Although the value of the coverings may in certain circumstances be added to fix the unit value of the imported article it is beyond the purpose of any legislation to base the value of the contents of a box upon the weight of the entire package, including the box itself. The court noted that under *Marriott* v. *Brune*, 9 How. 619, the weight of the goods actually imported must be taken as the basis of duties, and reached the conclusion that the board was correct in holding that the unit value of the pound of balsam of copaiba, multiplied by the net weight, furnished the correct basis for arriving at the dutiable value. Such conclusion was reached by the court upon the ground that the presumption is that such was the intention of the appraiser in fixing the unit value, and, secondly, that it would have been beyond his power to have pursued any other course under the holding of *United States* v. *Francklyn, supra.*

In noting that the board directed that the duty upon the value of the containers and coverings be added, the court stated:

Whether or not this is allowable would depend upon whether or not the value of the containers was provided for and included within the value as fixed by the

unit value multiplied by the net weight. In certain circumstances this is the proper method of dealing with the coverings. See *United States* v. *Francklyn, supra,* and *United States* v. *Downing* (7 Ct. Cust. Appls. 479; T. D. 37052).

In the present case, however, the report of the collector states that the unit value as entered, representing the cost of the balsam packèd, was advanced by the appraiser. *It would appear from this that the course pursued by the appraiser was to fix the unit value upon the goods including the cost of the containers and that if the net weight is multiplied by this unit value, the containers will have paid the rate of duty which the merchandise also bears, which is correct.*

We think, therefore, that *the order directing the addition of the cost of the containers should be overruled,* and that in all other respects the decision should stand affirmed. [Italics not quoted.]

See also decisions of our appellate court upon this subject as reported under *United States* v. *Hirsch, Stein & Co.,* 8 Ct. Cust. Appls. 121, T. D. 37226; *United States* v. *Stegemann,* 12 Ct. Cust. Appls. 198, T. D. 40179; *United States* v. *Dorn,* 13 Ct. Cust. Appls. 130, T. D. 40961; and *United States* v. *Mills & Gibbs,* 13 Ct. Cust. Appls. 137, T. D. 40963.

In the cases before us protest 833528–G, entry 745146, and protest 986115–G, entry 739144, the Pecorino Romano Sardo and Provolone cheese covered thereby was assessed with duty at 35 per centum ad valorem upon the basis of the dutiable value determined from the unit value multiplied by the net weight of the cheese, including the inedible coverings. As stipulated by counsel for both sides the Romano cheese contains an inedible covering composed of extraneous material weighing 2½ per centum of the net landed weight of the cheese, and under decisions incorporated herein the Provolone cheese also includes a covering of material, not cheese, equal to 2½ per centum of the net landed weight. In each of these cases the unit value, as stated upon the invoices, includes all packing as well as nondutiable charges. After deducting nondutiable charges, the price of each unit of 100 kilos of cheese is composed of the price of the cheese, and the cost of other packing charges, such as containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, and such charges would include the cost of inedible coverings. If any portion of such packing or other dutiable costs is not included in the *per se* unit price of the merchandise and is added, the total cost thereof is added to the total *per se* value of the goods, and upon such sum duty is levied. Therefore, when the price of each unit of imported merchandise includes all dutiable charges in accordance with section 402 (c) a multiplication of such unit value by the number of units of quantity of the *per se* merchandise will equal the sum upon which the ad valorem duties shall be levied.

In the foregoing calculation of Government counsel it is assumed that the cost of the inedible coverings is the same as the value of the cheese per unit. It is further assumed that the appraiser has appraised

the cost of such coverings at the price of a unit of cheese, which, under the law he has no right to do. Then he calculates the total weight of the inedible coverings and proceeds to multiply such weight by the unit value of the cheese in order to arrive at the total cost and assesses the same with duty at 35 per centum ad valorem, thus arriving at the same duty as would be applicable if paragraph 710 had levied duty upon "Cheese including the weight and value of all coverings other than plain wooden cases." Unfortunately for the position of the Government, paragraph 710 does not so provide, and it has been held unlawful for the Government by intricate mathematical calculation to introduce into the law something not intended by Congress. It lies solely with Congress to prescribe the rules by which the quantity or value of merchandise shall be ascertained and if Congress has not fixed the particulars to be regarded in determining the quantity by weight of goods, the merchandise alone is considered subject to duty.

It will be noted that the cost of all packing charges is included in the *per se* unit price of the cheese in the cases before us. If the total cost of such packing charges were not stated on the invoice, to follow the Government's theory of assessing the duty, such cost would be determined by multiplying the weight of the containers and packing by the unit value in order to arrive at the total cost to be added to the total value of the goods and upon such sum duty would be assessed. To pursue such a course would be equivalent to assessing duty upon the basis of the gross weight of the goods rather than the net weight thereof, as provided by law. The same situation would be true in respect to the inedible coverings. Duty would not only be assessed upon the coverings when assessment is levied upon the cheese *per se* but also upon the coverings separately. Under the foregoing decisions cited such would amount to a double assessment of duty upon the coverings which has been held to be contrary to the intention of Congress. We are therefore of the opinion that the Government's position is untenable.

The precise question raised by Government counsel was decided by this court in the case of *Parodi Erminio & Co.* v. *United States* (6 Cust. Ct. 95, C. D. 436) wherein it was held that when the cost of inedible coverings surrounding imported cheese is included in the *per se* unit price the dutiable value thereof is determined by multiplying such unit price by the units of net weight of the cheese, exclusive of the weight of the inedible coverings. That case was not appealed and we adhere to our decision therein.

For the reasons stated we hold that the Pecorino Romano Sardo, Romano, Provolone and Sbrinz cheese herein is properly dutiable upon the basis of the net weight of the cheese as returned by the Government weigher less 2½ per centum for inedible coverings, whether subject to specific duty or ad valorem duty, and that the

Riggiano cheese is also properly dutiable upon such basis less 1 per centum for inedible coverings.

Judgment will therefore be entered directing the collector to reliquidate the entries in accordance with our findings herein, and to make refund accordingly.